UNITED STATES, Appellee,

v.

Sergeant Rickey R. LYONS,
421–98–0028, United States
Army, Appellant.

ACMR 8901426.

U.S. Army Court of Military Review.

28 June 1991.

**544**

For Appellant: Captain Edward T. Keable, JAGC, Captain Paula C. Juba, JAGC (on brief).

For Appellee: Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Denise J. Arn, JAGC (on brief).

Before JOHNSON, COOK and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of members of rape and adultery in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 (1982), respectively. His approved sentence includes a dishonorable discharge, confinement for five years and reduction to Private E1.

The appellant contends that the military judge erred by admitting an unsworn, videotaped statement by the victim of the rape in violation of his sixth amendment right to confrontation and in contravention of Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 803(24) [hereinafter Mil.R.Evid.].[1] We disagree.

### I.

The appellant's victim was Mechelle H., the deaf, mute, mentally retarded, eighteen-year-old daughter of an Army sergeant stationed in Germany. Her retardation severely limited her ability to communicate. One of her schoolteachers, Dr. Murray–Seegert, testified that Mechelle's sign language vocabulary did not exceed two hundred words.[2] Consequently, she augmented her use of signs by pointing, gesturing and grunting. Despite her efforts, she had difficulty understanding questions posed to her or making herself understood. Sometimes she would not respond to questions at all. The translations of her trial testimony and pretrial statements indicate she "spoke" in single or multiple word, fragmented phrases rather than cohesive sentences. These fragmented phrases were often unintelligible.[3]

---

1. Mil.R.Evid. 803(24) is one of the rules of evidence that establish a general or residual exception to the hearsay rule. *See also* Mil.R.Evid. 804(b)(5). It provides in relevant part that the following is not excluded by the hearsay rule even though the declarant is available as a witness:

    A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the military judge determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative of the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence.

2. Mechelle's schoolteachers were employed by the Department of Defense Dependent School System as part of its special education program. They were specially trained to teach children who were hearing impaired and mentally retarded.

3. The following excerpt from the record of trial of a dialogue between Mechelle and the trial counsel illustrates the weaknesses in her communicative ability.

    Q. Hello Mechelle. How are you today?
    A. I go in long now, not behaving bad.
    Q. Mechelle, do you—will you tell us the truth?
    A. That, go, no.
    INTERPRETER: I am going to repeat the question.
    Q. Mechelle, will you tell us the truth?
    A. Yes, no. Man, in, said no.
    INTERPRETER: I will sign again. Just ask her again.
    Q. Mechelle, do you—is a lie bad?
    INTERPRETER: I didn't catch the beginning of it. I have to do that again.
    [Interpreter repeated the question.]
    A. Yes, no, wrong, in, wrong, no.

Expert and lay witnesses testified that, despite Mechelle's disabilities, she was a truthful person who understood the difference between right and wrong; who could function in her daily activities "at about the level of a normal seven year old" (in fact, she successfully held a job cleaning tables in the local post exchange cafeteria); and whose powers of observation were not impaired. Dr. Murray–Seegert opined that Mechelle functioned "at the mental level of a 5 year old child." Although Mechelle had received classes in sexual education, Dr. Murray–Seegert believed she did "not have the capacity to make a consent—an informed consent to sexual activity." The military judge specifically found that Mechelle's communicative abilities were "at about the level of a normal three year old." Nevertheless, he denied a defense motion to exclude her testimony on the grounds that Mechelle was incompetent to testify.

At about 1700 hours, 3 October 1988, Mechelle's mother returned home from work to find her taking a bath. As this was unusual behavior, Mrs. H. asked her why she was bathing. Mechelle responded in sign language that she "hurt", pointed first to her groin and then towards the appellant's house located across the street. When Mrs. H. noticed that Mechelle was "walking wide-legged," it confirmed her suspicion that Mechelle was in pain and suggested that she had been sexually molested. When Mrs. H. ordered her to, "Take me to where this person hurt you," Mechelle escorted her to the appellant's house. There, she confronted the appellant who appeared "real nervous." She told him that Mechelle had accused him of having sex with her. Although he denied the allegation, Mechelle's mother did not believe him and immediately took Mechelle to an Army clinic for examination and treatment. A gynecological examination of Mechelle, conducted that night by an Army obstetrician, revealed two intra-vaginal lac- erations that indicated recent penetration of her vagina of "either a sexual nature or a foreign object" but not normal, non-forcible intercourse. At the time she was being examined, Mechelle used signs and gestures to indicate to her mother and to Dr. Murray–Seegert, that she had been sexually penetrated by a man wearing a moustache.

The incident was referred to Special Agent (SA) Walsh of the local Criminal Investigation Division (CID) for investigation. During the next week, SA Walsh, aided by Mechelle's schoolteachers, interviewed her on several occasions. On 4 October 1988, the CID conducted a lineup at which Mechelle identified the appellant out of three different arrays as the man who had sex with her. Later that day, Mechelle reiterated to SA Walsh the circumstances surrounding the sexual encounter. Although this interview was recorded on videotape, the Government did not attempt to introduce it into evidence.

However, the Government did proffer a nine-minute excerpt from a video recording, made on 7 October 1988, in which Mechelle is shown purporting to reenact the incident at the scene of its occurrence. The videotape was made at the behest of and in the presence of agents of the CID. The video portion shows Mechelle responding with signs and gestures to questions posed to her in sign language by another of her schoolteachers, Mrs. Gordon. The audio portion is a synchronized, dubbed-in translation by Dr. Murray–Seegert of the signs and gestures of Mechelle and Mrs. Gordon during the course of their "conversation." In her reenactment, Mechelle is seen walking across a street from her house to the appellant's where he made her take a bath, showed her a videotape of a pornographic movie, and had sexual intercourse with her. Mechelle indicated to Mrs. Gordon that she "told" the appellant that sexual intercourse was "bad" and that she was "mad" about

Q. Mechelle, can you tell me what happened?
A. No, no, now and with, said no. Did not do anything wrong. Not do wrong.
Q. Where did you get hurt?
A. Said everything, no, did anything wrong.

Q. Mechelle, is the light on?
A. Light on, light on, turn on the light. Not do, open door, on, off.
Q. The light is on, right?
A. Go to light, on, go wrong, on, now, light.

engaging in that activity. The videotape was admitted into evidence at the conclusion of Mechelle's trial testimony on direct examination. In ruling the tape admissible, the military judge gave the defense the opportunity to cross-examine Mechelle concerning its content.

Mechelle's testimony on direct examination was essentially the same as that contained in her videotaped reenactment of the events on 7 October 1988. She indicated that the appellant was the man with the moustache with whom she had sexual intercourse on that date. She also indicated that she had previously engaged in sexual intercourse with the appellant on several occasions; that she had told the appellant that such activity was "bad"; and that she was "mad" at appellant. She explained the sex act by simulating sexual intercourse using male and female dolls.

In testifying in his own behalf, the appellant admitted that he had engaged in sexual intercourse with Mechelle on 3 October 1988. He averred that she not only consented to the sex act, but initiated it when she visited his house to return a pornographic videotape she had borrowed from him. Only after Mechelle played the tape and invited the appellant to have sex with her did he accept her invitation. The appellant also admitted to having had sexual intercourse with Mechelle at his house on two prior occasions wherein she had assented to the acts.

The defense's expert witness, Ms. Gladys, another teacher of hearing impaired children, described Mechelle's communication skills in the following way:

She uses words independent of each other. It's really not either way. She doesn't really talk in syntactically correct English and she doesn't really talk conceptually. But she does sign words in a series that don't particularly give a concept and they are not in English order.

Ms. Gladys testified that from her observation of Mechelle at the pretrial investigation, Mechelle did not appear to understand many of the questions propounded to her and did not respond to critical questions bearing on the appellant's commission of the offense. Mechelle also misidentified a clerk at the hearing as the "man with the moustache." Ms. Gladys believed that Mechelle may have been coached prior to testifying at trial.

## II.

In ruling that the videotape was admissible, the military judge determined that the evidence on the tape was sufficiently trustworthy and complied with the four substantive requirements of the residual exception to the hearsay rule—trustworthiness, materiality, probativeness, and interests of justice.[4] In a written memorandum appended to the record, he stated that admission of the videotape:

has equivalent circumstantial guarantees of trustworthiness as the hearsay exceptions on excited utterance, recorded recollection, and former testimony, is offered as evidence of a material fact, is more probative on the point for which it is being offered than any other evidence that the government could procure through reasonable efforts, and the interest of justice will best be served by the admission of [the videotape] into evidence;

The judge cited the following factors in support of his determination that there were sufficient circumstantial guarantees of trustworthiness: 1) the questions posed to Mechelle were not leading or overly suggestive in light of her retardation; 2) although there was police involvement in production of the tape (the CID organized the reenactment and CID agents were present at the scene), it did not influence Mechelle's demonstration of what had happened to her; 3) there was no evidence that the reenactment was rehearsed; 4) the videotape was not inconsistent with Mechelle's trial testimony; 5) there was no evidence that Mechelle was biased towards the appellant; 6) there was corroboration from

---

4. The fifth requirement, notice to the opposing party, is procedural in nature and was not in issue in this case.

extrinsic circumstances; 7) the statement was made under stress from the incident and was similar to an excited utterance; and 8) Mechelle was subject to cross-examination concerning the content of the videotape.

He also found that the evidence on the videotape was more probative than any other evidence even though Mechelle had testified to essentially the same matter at trial. He reasoned that there was no substitute for the evidence "other than perhaps for the trier of fact to visit the scene of the alleged rape under court supervision." In addition, he noted that, at a prior court appearance, Mechelle was unable "to provide responsive or even intelligible answers to the questions asked of her by the detailed trial counsel" because of her limited vocabulary, uneasiness with the trial counsel, nervousness or a combination of those factors. By implication, the judge concluded that the videotaped reenactment was a more lucid rendition of the evidence than Mechelle's trial testimony.

### III.

■ Initially, we observe that appellant's constitutional right to confrontation was not abridged by the admission of Mechelle's pretrial statement as she testified at trial and was cross-examined by the appellant. "When a declarant is available, there is no confrontation issue, *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), and the government need only satisfy the purely evidentiary standard of 'equivalent circumstantial guarantees of trustworthiness.' Mil.R. Evid. 803(24)." *United States v. Murphy*, 30 M.J. 1040 (A.C.M.R.1990); *accord United States v. Fink*, 32 M.J. 987 (A.C.M.R. 1991).

■ Nevertheless, the appellant argues that the fact that Mechelle appeared as a witness should not, by itself, be sufficient to meet the demands of the confrontation clause. He asserts that her disabilities prevented him from effectively cross-examining her. One federal circuit court of appeals has considered this argument in a similar factual context and rejected it. In

*United States v. Spotted War Bonnet*, 933 F.2d 1471 (8th Cir.1991), the court held that a defendant's right of confrontation had not been abridged when a child witness could not remember the underlying events upon which the pretrial statement was based and hence, could not be cross-examined on them. "[T]he question is whether there is 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever, extent, the defense might wish.' Fensterer, [*Delaware v. Fensterer*], *supra*, 474 U.S. [15] 20 [106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985)], quoted with approval in Owens, [*United States v. Owens*] 484 U.S. [554] 559 [108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988)]." In view of the military judge's finding that Mechelle was a competent witness, we see no factual basis for appellant's argument even if we were to accept his legal rationale.

■ A trial judge's determination to admit evidence pursuant to the residual exception to the hearsay rule is a discretionary one which will normally not be reversed except for abuse. *United States v. Williams*, 23 M.J. 792 (A.C.M.R.1987), *aff'd*, 26 M.J. 487 (C.M.A.1988); *United States v. Crayton*, 17 M.J. 932 (A.F.C.M.R. 1984), *pet. denied*, 19 M.J. 57 (C.M.A.1984). While we do not entirely agree with the reasons enumerated by the military judge in support of his ruling, we find his analysis and rationale substantially correct and complies with the abuse of discretion standard. Concerning his determination that Mechelle's taped statement was circumstantially trustworthy, we find that the record supports the judge's conclusions that the questions were not leading or overly suggestive, *cf. United States v. Cordero*, 22 M.J. 216 (C.M.A.1986); that police involvement in the production of the tape was *de minimis* and did not influence her reenactment of the incident; that there was no evidence that the statement was rehearsed; that it was not inconsistent with her trial testimony; and that the appellant was given the opportunity to cross-examine Mechelle at trial concerning the content of the statement.

We are uncertain of what the judge meant when he found Mechelle's taped statement corroborated by extrinsic circumstances. In an opinion post-dating the trial of this case, the Supreme Court limited use of corroborating evidence to enhance the trustworthiness of an out-of-court statement to those that "surround the making of the statement." *Idaho v. Wright*, — U.S. —, 110 S.Ct. 3139, 3153, 111 L.Ed.2d 638 (1990). Although the possibility that the judge violated the mandate of *Idaho v. Wright* does exist, we find that it was harmless.

■■■ We disagree with the judge's finding that Mechelle's statement may be likened to an excited utterance, recorded recollection or former testimony. The record shows that Mechelle was not uneducated about sex nor was this her first sexual experience with the appellant. We therefore doubt that she was traumatized to the extent of inducing her to make an excited utterance four days after the event. Likewise, there is no indication that Mechelle's memory was faulty or that her taped statement was subjected to cross-examination by the appellant at the time it was made. However, despite our disagreement with the judge on these points, we sustain his finding that the statement was trustworthy.

We also hold that the military judge correctly determined that the videotaped statement was more probative than any other evidence the prosecution could reasonably obtain to establish that the appellant and Mechelle had engaged in sexual intercourse. In so holding, we are aware that there is other evidence to the same effect— Mechelle's trial testimony, her initial complaint to her mother, her selection of appellant from a lineup, and the medical evidence of injury to her vagina. Furthermore, we are mindful of Chief Judge Everett's concern that "it seems curious that a prior statement by a witness who testifies willingly in court, is in good physical condition, and does not profess to any lack of memory could be 'more probative' than testimony offered in court on the same point by a witness who can be observed by the factfinder and is subject to cross-examination." *United States v. Guaglione*, 27 M.J. 268, 274 (C.M.A.1988). We have heeded his admonition, eschewed an "overly mechanistic" analysis, and balanced all the circumstances indigenous to this case. We conclude that Mechelle's physical and mental disabilities diminished her ability to communicate through a translator to the court members. Thus, the showing of the videotaped statement was necessary to fully explain the details of the incident to the court members. In particular, Mechelle's reenactment of the sex act on a bed in the appellant's house left little doubt that she and the appellant were engaged in sexual intercourse. The legislative history of the residual exception to the hearsay rule indicates that Congress intended that it "be used rarely and only in exceptional circumstances." S.Rep. No. 1277, 93d Cong., 2 Sess., 1974 U.S.Code Cong. & Admin.News 7051, 7066 *cited* in *United States v. Guaglione, supra* at 274. Clearly, the facts of this case are exceptional enough to warrant application of Mil.R.Evid. 803(24).

Finally, Mil.R.Evid. 102 provides, "These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined." This succinctly and accurately describes the "interests of justice" requirement of Mil.R.Evid. 803(24). We hold that the admission of the videotaped statement was consistent with the accomplishment of these aims.

## IV.

■■■ Two other matters deserve comment. First, we are satisfied that the appellant's conviction for rape was factually and legally supported. The testimony of expert witnesses at trial establishing Mechelle's mental age at the level of a three to five-year-old child amply demonstrated that she was legally incapable of giving consent to having sex with the appellant. *United States v. Henderson*, 15 C.M.R. 268 (C.M. A.1954). Moreover, we also find that Mec-

helle's testimony that she told the appellant that sexual intercourse with him was "bad" and that she was "mad" about engaging in it sufficiently expressed her lack of consent to him. Second, we hold that the rape and adultery charges are multiplicious for findings. *United States v. Hickson*, 22 M.J. 146 (C.M.A.1986). We have considered those issues personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them without merit.

The findings of guilty of Charge II and its Specification are set aside and that charge is dismissed. The remaining findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge COOK concur.