**UNITED STATES, Appellee,**

v.

**Rickey R. LYONS, Sergeant
U.S. Army, Appellant.**

No. 67,095.
CM 8901426.

U.S. Court of Military Appeals.

Argued May 7, 1992.

Decided Sept. 30, 1992.

For Appellant: *Captain Mark L. Toole* (argued); *Lieutenant Colonel James H. Weise, Major James M. Heaton, Captain Edward T. Keable* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Major Kenneth T. Grant* (argued); *Colonel Dayton M. Cramer* and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief); *Major Joseph S. Swetnam.*

*Opinion of the Court*

WISS, Judge:

In a contested trial, a general court-martial with members convicted appellant of rape and adultery, *see* Arts. 120 and 134, Uniform Code of Military Justice, 10 USC

§§ 920 and 934, respectively, and sentenced him to a dishonorable discharge, confinement for 5 years, and reduction to the lowest enlisted grade. The convening authority approved these results, but the Court of Military Review affirmed[1] only the conviction for rape and the sentence. 33 MJ 543 (1991).

Thereafter, we granted review of appellant's claim that the military judge erred by admitting into evidence, over his objection, an unsworn, videotaped statement made by the victim, *see* Mil.R.Evid. 803(24), Manual for Courts–Martial, United States, 1984. Now, after full consideration, we conclude that no error occurred.

I

A

Appellant's victim, Mechelle, was 17 years old, deaf, mute, and severely mentally retarded. The military judge found, on the basis of expert testimony and his own observation of her at trial, that Mechelle could function in her daily activities on the level of a normal 7–year–old and that she could communicate with others on the level of a normal 3–year–old.

Mechelle was trained to sign, but her retardation limited her signing vocabulary to about 200 words. As a result, she supplemented this mode of communication by pointing, gesturing, and grunting. Even so, Mechelle's communicative skills were substantially limited, and getting her to respond to questions was a tortuous process that required expert assistance to ask the questions and to help understand her answers—whenever she, in fact, did answer at all.

The offenses with which appellant was charged were uncovered by Mechelle's mother. When she returned home from work on the day when the offenses were alleged to have happened, she found Mechelle's behavior unusual. She asked her daughter about her behavior, and Mechelle signed that she "hurt" and pointed to her groin. Then the mother saw Mechelle "walking wide-legged" as though in pain. She asked Mechelle why she was hurting, and Mechelle pointed to appellant's house across the street. In response to the mother's request to show her where "this person" had hurt her, Mechelle took her mother to appellant's house. Because Mechelle had signed "sex" and had pointed to appellant's house as the place it had occurred, the mother confronted appellant with the accusation that he had had sex with her daughter, but appellant denied the allegation.

A subsequent medical examination confirmed that Mechelle's vagina recently had been penetrated forcibly. During the examination, Mechelle—with the interpretive help of her mother and one of her teachers named Dr. Seegert—repeated the same story she earlier had told her mother.

An investigation by the local Criminal Investigation Command (CID) followed. The day after the incident, Special Agent Walsh, with Dr. Seegert's assistance, conducted a lineup. Shown three separate arrays, Mechelle pointed to appellant each time when Dr. Seegert asked her, "What man had sex with you?" After the lineup, Walsh interviewed Mechelle on videotape with Dr. Seegert's communicative assistance, but Mechelle's responses were limited to simply signing back what Dr. Seegert had signed to her.

Three days later, Walsh interviewed Mechelle again on videotape. This interview, conducted through interpretation of Robin Gordon, who is another of Mechelle's teachers trained to work with learning-impaired students, included a "walk through" of the incident by Mechelle at appellant's house. Mechelle's reenactment shows her walking across the street from her house to appellant's, where he made her take a bath; watching a pornographic movie shown by appellant; and sexual intercourse between the two of them. The reenactment shows

1. The briefs filed by both sides erroneously state that the court below affirmed the findings of guilty and the sentence.

Mechelle telling Ms. Gordon that she "told" appellant that intercourse was "bad" and that she was "mad" about appellant's doing that to her.

## B

The critical portion of the Government's case against appellant, as is usually so in such prosecutions, was the victim's version of the events. Mechelle was present and testified as a prosecution witness; however, her mental retardation caused her description of the events in the courtroom to be rather ineffective. Consequently, trial counsel sought to introduce the videotape of Ms. Gordon's interview of appellant to supplement that testimony.

Notwithstanding defense's objection, the military judge admitted the videotape pursuant to Mil.R.Evid. 803(24) as an exception to the rule against hearsay, see Mil.R.Evid. 802, and he entered detailed and specific factual findings to support his decision. His ruling, however, contained several restrictions.

First, the only portion of the videotape that he would permit was that portion beginning with Ms. Gordon asking Mechelle to "show me where it happened" and ending with Mechelle walking out of appellant's residence—in other words, the reenactment. Second, he directed that the original videotape be copied to include only that portion of the tape and to include, as well, a simultaneous voice translation of the signing between Mechelle and Ms. Gordon. Finally, this tape was to be shown at the conclusion of Mechelle's direct testimony in the courtroom so that defense counsel's cross-examination could include the tape's contents if he wished.

The trial itself proceeded as anticipated: Mechelle did testify; the tape was admitted immediately thereafter; and defense counsel cross-examined her. The substance of the cross-examination included her videotaped reenactment.

During the subsequent defense case-in-chief, appellant himself testified. He admitted to having sexual intercourse with Mechelle on the date in question, but he contended that the intercourse was consensual. As well, he revealed that they had engaged in intercourse under similar circumstances twice before the incident charged, also consensual.

## II

This case presents a most unusual situation. Quite clearly, Mechelle was available as a witness at trial—indeed, she did appear as a witness. In the usual circumstance, Mechelle would have testified as to what occurred between her and appellant, and the videotape, as a prior consistent statement, normally would not have been admissible. See Mil.R.Evid. 613 and 801(d)(1)(B); *United States v. Guaglione*, 27 MJ 268, 273 (CMA 1988). See also *United States v. Hurst*, 29 MJ 477 (CMA 1990); *United States v. Jones*, 26 MJ 197 (CMA 1988); *United States v. LeMere*, 22 MJ 61 (CMA 1986).

Of course, this was not the usual circumstance. After a fairly extensive effort to obtain Mechelle's testimony had demonstrated that her responses were largely substantively unintelligible because of her physical and mental infirmities, the military judge concluded that the only effective way to obtain her version of the events was to show her own videotaped recreation of those events. With persuasive logic, appellant contends in this Court that the military judge's ruling, in effect, acknowledged that Mechelle was not meaningfully "available" for cross-examination and that, accordingly, admission of the videotape must clear not only the evidentiary hearsay hurdle but also the Constitution's Confrontation Clause.

The Court of Military Review disagreed. Pointing to Mechelle's trial appearance and appellant's cross-examination of her, that court concluded that there was no confrontation issue and that only the evidentiary hearsay exception of Mil.R.Evid. 803(24) need be considered. 33 MJ at 547. See *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). The court analogized this case to the circumstances

presented in *United States v. Spotted War Bonnet*, 933 F.2d 1471 (8th Cir.1991), where "the court held that a defendant's right of confrontation had not been abridged when a child witness could not remember the underlying events upon which the pretrial statement was based and, hence, could not be cross-examined on them." The Court of Military Review quoted from that opinion, as follows:

"[T]he question is whether there is 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' *Fensterer [Delaware v. Fensterer], supra*, 474 U.S. [15] 20 [106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985)], quoted with approval in *Owens [United States v. Owens]* 484 U.S. [554] 559 [108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988)]."

33 MJ at 547.

For purposes of this appeal and to assure the fullest protection of appellant's confrontation rights, we will not here more fully consider the logical applicability of *Spotted War Bonnet* to these facts and whether appellant was afforded "an opportunity for effective cross-examination." Instead, we will assume that, for constitutional and evidentiary purposes (*see* Mil. R.Evid. 804(a)(4)), Mechelle was not "available" for cross-examination. Accordingly, we will measure admission of this videotape against, first, the Constitution's Confrontation Clause and, second, the requirements of Mil.R.Evid. 804(b)(5)(the residual hearsay exception where the declarant is not available).[2]

*Confrontation Clause*

■ To satisfy the Confrontation Clause, an out-of-court statement made by an unavailable declarant "is admissible only if it bears adequate 'indicia of reliability.'" *Idaho v. Wright*, 497 U.S. 805, 814–

15, 110 S.Ct. 3139, 3141, 111 L.Ed.2d 638 (1990), quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). Since the residual exception to the hearsay rule is not one of the "firmly rooted" exceptions, *see Idaho v. Wright*, 497 U.S. at 817, 110 S.Ct. at 3142, *United States v. Hines*, 23 MJ 125, 134 (CMA 1986), this requirement is met only by "a showing of particularized guarantees of trustworthiness." *Idaho v. Wright*, 497 U.S. at 815, 110 S.Ct. at 3142, quoting *Ohio v. Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539.

"In looking for these 'particularized guarantees of trustworthiness,' we examine 'the totality of the circumstances.' The only 'relevant circumstances,' however, are 'those that surround the making of the statement and that render the declarant particularly worthy of belief.'" *United States v. Clark*, 35 MJ 98, 106 (CMA 1992), quoting *Idaho v. Wright*, 497 U.S. at 819, 110 S.Ct. at 31.

■ Concerning the circumstances surrounding the making of the statement, the military judge's findings read as follows:

(3) The circumstances under which PE [pros. exhibit] 8 was videotaped and produced strongly tend to affirm, rather than detract from its accuracy and trustworthiness in that:

(a) The questions asked of [Mechelle] were not leading or overly suggestive in light of the degree of [Mechelle's] retardation and her difficulty in communicating with others (nor would these same questions have been objectionable in court during her testimony on direct examination);

(b) This was not a "police-station interview" because the involvement of the CID agent who was present during the interview of [Mechelle] was not much more than that of an observer [*cf. Unit-*

2. There is no substantive difference between the requirements of Mil.R.Evid. 803(24), under which the military judge admitted the videotape, and Mil.R.Evid. 804(b)(5); indeed, they are virtually verbatim. The only difference is that, unlike the former, the latter applies only when the declarant of the prior statement is not available. Accordingly, our consideration of application of a hearsay exception under the Military Rules of Evidence is the same, regardless of which rule is in issue.

ed States v. Guaglione, 27 MJ at 274–75]; and

(c) There was no evidence introduced in support of this motion that the events on PE 8 were rehearsed, or that anyone said or did anything before or during the videotaping that would have had an adverse effect on the reliability of PE 8.

As to circumstances that rendered Mechelle particularly worthy of belief, the military judge found the following:

(c) Dr. Seegert testified that:

(1) It would be almost impossible for [Mechelle] to fabricate an entire incident of such complexity as the one which [Mechelle] describes on PE 8 and which is the subject of the charges against the accused; and

(2) [Mechelle] is "very honest," if for no other reasons than because she does not have the inhibitions that would cause others to hold back information and because she lacks the degree of creativity required to be deceitful;

(d) At the time of the out-of-court declarations on PE 8, [Mechelle] was still obviously under the stress of excitement from the incident that is the basis for the charges against the accused, was not likely to have concocted an untruthful statement (with or without reflection), and was emotionally and excitedly volunteering information rather than calmly answering questions asked of her by Mrs. Gordon;

(e) There is no evidence that [Mechelle] is in any way biased toward the accused, or has an incentive to falsify or distort her testimony; or has any motive or reason to make a false statement that she was raped or sexually assaulted or to make such an accusation against the accused.

Under the unique circumstances of this case, we believe that the military judge's analysis was sound and that his rationale and findings were sound. On these same bases, which we believe reflect "particularized guarantees of trustworthiness," we hold that appellant was not denied his constitutional right of confrontation by admission of Mechelle's videotaped out-of-court statement.

*Residual Exception to the Hearsay Rule*

■ Mil.R.Evid. 804(b)(5) provides that the hearsay rule does not exclude the following kind of statement made by an unavailable declarant:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the military judge determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative of the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interest of justice will best be served by admission of the statement into evidence....

Having concluded that the statement satisfied appellant's confrontation interests, necessarily the statement possessed "equivalent circumstantial guarantees of trustworthiness." *United States v. Hines*, 23 MJ at 134. Therefore, we here focus on the three specific additional requirements for admissibility under Mil.R.Evid. 804(b)(5).

Quite clearly, as appellant candidly acknowledges, the videotaped statement was evidence of a material fact; indeed, it was evidence of nearly every element of both charged offenses. Additionally, considering Mechelle's serious physical and mental handicaps, the videotape was more probative than any other evidence reasonably procurable, including her own in-court testimony. *Cf. United States v. Guaglione*, 27 MJ at 274. Finally, given the assurances of reliability discussed earlier, the military judge's careful restrictions on admission and use of the videotape, and the apparent hopelessness of determining the issue of appellant's guilt of the charged offenses in a court of law unless the videotape was admitted, we are confident that the purposes of the rules of evidence and the best interests of justice were served by admis-

sion of the videotape into evidence. *See generally* Mil.R.Evid. 102. We are further reassured as to this latter point by defense counsel's at least limited success in cross-examining Mechelle and by the availability of Ms. Gordon for defense examination regarding the conduct of the reenactment.

As this Court noted in *United States v. Guaglione,* 27 MJ at 274, the legislative history of the residual exceptions to the hearsay rule indicates that Congress intended for them to be "used very rarely and only in exceptional circumstances." S.Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 7051, 7066. Most surely, these are exceptional circumstances.

### III

The decision of the United States Army Court of Military Review is affirmed.

Judge GIERKE concurs.

SULLIVAN, Chief Judge (concurring):

The granted issue in this case is as follows:

> WHETHER THE MILITARY JUDGE ERRED BY RULING THAT THE UNSWORN, VIDEOTAPED STATEMENT BY THE ALLEGED VICTIM WAS ADMISSIBLE HEARSAY, PURSUANT TO MILITARY RULE OF EVIDENCE 803(24).

I perceive no constitutional issue of confrontation in this grant or in appellant's brief. Although I agree with the principal opinion's conclusion on this question (*see United States v. Spotted War Bonnet,* 933 F.2d 1471, 1473 (8th Cir.1991)), I see no pressing need to address it today. Nevertheless, I agree with the principal opinion's circumstantial-guarantees-of trustworthiness analysis as required by Mil.R.Evid. 804(b)(5), Manual for Courts–Martial, United States, 1984. 36 MJ 187.

COX, Judge (concurring):

I am of the opinion that the victim was available for cross-examination, thus confrontation concerns were satisfied. *United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). Further, I agree with Judge Wiss that, even if confrontation requirements were not met and the witness was "unavailable," the out-of-court video was admissible into evidence. Furthermore, as the majority opinion suggests, the question remains open whether the corroboration rules relating to statements of the unavailable witness announced in *Idaho v. Wright,* 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), are likewise applicable to residual hearsay offered under Mil.R.Evid. 803(24), Manual for Courts–Martial, United States, 1984, when the witness is available for confrontation, or is there a lesser standard?

CRAWFORD, Judge (concurring in the result):

I agree with the Court of Military Review that there is no confrontation issue when the witness is present and testifies. The question is whether there is an "opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v. Owens,* 484 U.S. 554, 559, 108 S.Ct. 838, 842, 98 L.Ed.2d 951 (1988), quoting *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). Here there was an opportunity for cross-examination; thus there is no confrontation issue. If the Confrontation Clause is satisfied, the corroborating facts under the residual hearsay exception are different from the corroborating facts employed when there is a violation of the right to confrontation. The "particularized guarantees of trustworthiness" required under the Confrontation Clause must "be drawn from the totality of circumstances that surround the making of the statement." *Idaho v. Wright,* 497 U.S. 805, 820, 110 S.Ct. 3139, 3149, 111 L.Ed.2d 638 (1990). The examples set forth in *Wright* are as follows: the "spontaneity and consistent repetition; ... mental state of the declarant; ... use of terminology unexpected of a child; ... [and] lack of motive to fabricate...." 497 U.S. at 821–22, 110 S.Ct. at 3150. In contrast to the circumstances surrounding the taking of

the statement, where the Confrontation Clause is not at issue, the "guarantees of trustworthiness" satisfying the residual-hearsay rule are the factors set forth in *United States v. Hines*, 23 MJ 125 (CMA 1986). Accordingly, the factors as to "particularized guarantees of trustworthiness" under the Confrontation Clause versus the "guarantees of trustworthiness" under the residual-hearsay rule are different. *See United States v. Clark*, 35 MJ 98, 107 (CMA 1992) (Crawford, J., concurring).