**UNITED STATES, Appellee,**

v.

**Chief Warrant Officer Two Mitchel A. WILEY, 320–48–9705, United States Army, Appellant.**

**ACMR 9102106.**

U.S. Army Court of Military Review.

5 Feb. 1993.

For Appellant: Captain Lawrence W. Andrea, JAGC (argued); Captain Michael P. Moran, JAGC, Captain Timothy M. Lawlor, JAGC (on brief). Major Fran W. Walterhouse, JAGC.

For Appellee: Captain Glenn L. Kirschner, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Timothy W. Lucas, JAGC (on brief).

Before WERNER, JOHNSON, and GRAVELLE, Appellate Military Judges.

OPINION OF THE COURT

WERNER, Senior Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officers of one specification alleging that, on divers occasions, he performed indecent acts with his daughter who was then under the age of sixteen, and one specification alleging that, on divers occasions, he indecently assaulted his daughter after she had attained the age of sixteen, both violative of Article 134, Uniform Code

of Military Justice, 10 U.S.C. § 934 (1982) [hereinafter UCMJ]. The court-martial sentenced the appellant to a dishonorable discharge, confinement for six years, and forfeiture of all pay and allowances. The convening authority approved the sentence.

The appellant questions the correctness of a ruling by the military judge admitting a pretrial hearsay statement of an available, nontestifying witness, proffered by the trial counsel under the residual exception to the hearsay rule. The exception, Manual for Courts–Martial, United States, 1984, Mil.R.Evid. 803(24) [hereinafter Mil. R.Evid.], permits the following hearsay evidence to be admitted:

> A statement not specifically covered by any of the foregoing exceptions [*i.e.*, the specifically enumerated exceptions contained in Mil.R.Evid. 803(1–23)] but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the intention to offer the statement and the particulars of it, including the name and address of the declarant.[1]

The appellant contends that the judge erred in admitting the statement as it failed to meet the probativeness requirement of Mil.R.Evid. 803(24)(B). The essence of his argument is that, as the record shows that the statement was "duplicative, by an available declarant, and less probative of the better evidence already admitted," it could not be the "most probative" evidence procurable by the government under the circumstances. We find that the appellant's contention has merit and hold that the military judge erred in admitting the statement.

## I. Background

The investigation of the charges against the appellant began in April 1991 when the appellant's sixteen-year-old daughter, C.W., during a church-sponsored discussion about sexual abuse, revealed that the appellant had been performing sex acts with her since she began puberty at the age of ten. C.W.'s allegations blossomed into three separate charges involving attempted rape, indecent acts with a minor, and indecent assault. The first charge alleged attempted rape at the appellant's office at Fort Polk, Louisiana, in February 1991. The second charge alleged indecent acts by fondling C.W.'s breasts and vagina and licking her vagina during 1987–1990 at Fort Polk and Fulda, Germany. The third charge alleged indecent assaults by performing similar sex acts with her after 10 October 1990, at Fort Polk. C.W. turned sixteen on 11 October 1990.

The government based its case on C.W.'s testimony that the appellant committed each of the charged offenses; the appellant's sworn statement to an Army criminal investigator (CID) admitting that he committed only one indecent act with C.W. at Fulda; the testimony of the appellant's wife corroborating his admission and also that C.W. had complained to her about the appellant's indecent acts on several occasions; and a pretrial statement given under oath to the CID by the appellant's fifteen-year-old son, describing that he observed the appellant performing a second indecent act upon C.W. at Fulda. The defense's case rested on its impeachment of C.W.'s testimony through aggressive cross-examination; testimony from C.W.'s mother and one of her teachers attesting to her poor character for truth and veracity; and testimony from two of the appellant's military

---

1. The identical language is found in Mil.R.Evid. 804(b)(5), the residual exception to the hearsay rule applicable to situations where the declarant is unavailable to testify. *See also* Federal Rules of Evidence 803(24) and 804(b)(5).

superiors circumstantially contradicting critical points in C.W.'s testimony concerning the attempted rape. The court members acquitted the appellant of attempted rape but convicted him of indecent acts and indecent assault.

## II. Evidence

C.W. testified that, in 1988 or 1989, while in Fulda, she told her mother about the appellant's behavior. When confronted by his wife, the appellant admitted that he had indecently touched C.W. on one occasion. He called the entire family together and asked them for forgiveness. However, according to C.W., the abuse did not end. She described a second occasion in Fulda when the appellant entered her room, removed her pants and panties and began fondling her. As the appellant prepared to lick C.W.'s vagina, he was interrupted by his son. After ordering the boy to leave the room, the appellant got up and closed the door. C.W. stated that the appellant continued to perform indecent acts upon her after the family moved to Fort Polk. She also described another incident at Fort Polk in which the appellant took her to his office one evening and attempted to engage in sexual intercourse with her. C.W. said she reported the abuse to her mother several times but that the latter did nothing to stop it.

On cross-examination, the defense attempted to establish that C.W. had fabricated the stories. The defense claimed she wanted to harm the appellant because he was a strict disciplinarian and she was rebellious. She admitted she lied at the Article 32, UCMJ, investigation concerning some of the details surrounding the alleged rape at the appellant's office. In response to questions from the defense counsel, she also admitted she lied to her mother concerning whether she had sex with a boy from school.

In his sworn statement to the CID in which he admitted that he indecently touched C.W. in Fulda, the appellant stated:

We moved to Fulda, Germany in Jun 1987. During 1988, I don't remember the date, [C.W.] and I were in the living room, alone. She asked me if I wanted to touch her or feel her. At first I just looked at her. I told her that she was crazy and I wasn't going to do that. Then I touched her breasts and put my hand on the outside of her vagina. She had her nightgown on at that time. She had pulled her nightgown up to her waist. That was the only time I ever touched her while in Germany.

The appellant did not mention the apology to the family and denied indecently touching C.W. on any other occasion.

Mrs. Wiley testified that C.W. had complained to her about the appellant's indecent acts before and after he apologized to the family. She stated that the first time C.W. had complained about the appellant abusing her was in Killeen, Texas, prior to the family moving to Fulda. When she asked the appellant about it, he denied that the abuse occurred. The second time occurred in Fulda where the appellant acknowledged the incident and apologized to the family. The third time occurred at Fort Polk and the appellant again denied anything happened.

The statement by the appellant's son corroborated C.W.'s testimony that she had been sexually abused by the appellant in Fulda. His sworn, signed statement to the CID, which was introduced into evidence over the defense's objection, relates that, subsequent to the appellant's apology for indecently touching C.W., he observed the appellant doing it again. According to the boy:

Sometime in 1988 or 89 my mom had told me that my dad had sexually abused my sister, she didn't say what he had done, but that he had gone into her room and stayed there a long time. Later on that year I had seen my dad go into my sisters room and I remember what had happen before so I opened the door to her room and saw my sister sitting on the floor with her pants and panties down around her ankle. My dad was sitting next to her with his back slightly to the door and his right hand was lying on her thigh. Once he saw me he jump

up and grabbed me and I yanked loose and attempted to hit him.

### III. Military Judge's Ruling

At a pretrial hearing, the government filed a notice of intent to offer the boy's statement on the merits under the residual exception to the hearsay rule. The defense opposed the government's proffer by motion *in limine* to exclude the statement. In support of its proffer, the trial counsel stated that the appellant's son had recanted the statement during the Article 32, UCMJ, investigation.[2] Testifying at the hearing, the boy informed the military judge that he did not enter his sister's room or observe the appellant performing an indecent act with her. Furthermore, he denied making the statement notwithstanding it had his signature and initials on it. Finally, he denied reading the statement before signing it.[3]

In attempting to establish that the boy's statement was more probative than any other evidence reasonably obtainable, the government asserted in its brief supporting the motion that:

> [The brother's] statement is more probative of the incident in question than any other reasonably available evidence. This case amounts to a swearing contest between [C.W.] and her father, the accused. She has testified that indecent touching occurred and her father has denied it (except for one solitary incident). [The brother's] statement indicates he witnessed an act that occurred *after* the one which the accused has admitted to. His statement is crucial to the panel so it can decide whether [C.W.] or the accused is telling the truth. There is no other evidence that either the Government or the defense can adduce on this issue.

During argument on the motion, the trial counsel further asserted that the statement would be more probative because it came from "a neutral, detached third party without an axe to grind." The trial counsel did not submit nor did the judge require him to submit evidence to substantiate his claim that alternative means of proving the allegation were not reasonably obtainable. The defense counsel's objection to the admission of the statement was predicated only on grounds that it was not the most probative evidence procurable. The defense counsel did not raise the matter of whether the government had made reasonable efforts to obtain alternative evidence.

At the conclusion of the hearing, the military judge made thirty-seven detailed findings of fact from which he concluded that the boy's statement met the five prerequisites for admission into evidence under the residual exception to the hearsay rule (*i.e.*, notice, materiality, trustworthiness, probativeness, and interests of justice). Concerning probativeness, the judge ruled:

> With respect to the issue of probativeness; that is, whether the statement is more probative than any other evidence that can be offered by the proponent, I find that probative means more than just relevance. I find that I can consider the credibility of the other evidence in determining whether any particular piece of evidence is more probative than any other.
>
> I further find that if the statement of [C.W.] or the testimony of it or her testimony—if her credibility and her testimony is significantly attacked, then I find that the statement of [her brother] would be more probative on the point from [sic] which it is offered than any other evidence which the proponent can procure through reasonable efforts.

During its case-in-chief and after C.W. testified, the government proffered the statement from the appellant's son and the defense objected "on the original grounds

---

**2.** The appellant's son also made an oral statement to a state social worker in which he described the circumstances of the incident in the same way as in his statement to the CID. At the Article 32 investigation, he recanted this statement as well.

**3.** At the hearing, the boy also denied telling the social worker that he had seen the appellant performing an indecent act with his sister.

and the fact that the contingency which [the judge] put up did not arise."[4] The judge overruled the defense objection and admitted the statement into evidence. He found that the boy's statement was more probative than C.W.'s in-court testimony as the defense had "attacked [C.W.'s] credibility [during cross-examination] in great measure" and that the boy's statement was "highly credible and ... important."

## IV. Decision

■■■ Military judges have great discretion to determine the admissibility of evidence. However, that discretion is not unlimited. This is especially true where application of the residual exception to the hearsay rule is in issue since the rule is to be used "rarely and only in exceptional circumstances." S.Rep. No. 1277, 93d Cong., 2 Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051, 7066, cited in *United States v. Guaglione*, 27 M.J. 268, 274 (C.M.A.1988). "[A]ll prerequisites for use of the residual exception must be satisfied, unless they are waived by the party against whom the statement is being introduced." *Guaglione*, 27 M.J. at 274. Through its plain language, the residual hearsay exception places a dual burden on the proponent of hearsay evidence in order

to establish admissibility. First, the proponent must demonstrate that the proffered evidence is more probative than any other evidence on the point for which it is offered. *United States v. Giambra*, 33 M.J. 331 (C.M.A.1991); *United States v. Lyons*, 33 M.J. 543 (A.C.M.R.1991), *aff'd*, 36 M.J. 183 (C.M.A.1992). Second, it must show that other evidence on the point was not procurable through reasonable efforts. *United States v. Kim*, 595 F.2d 755 (D.C.Cir.1979); *see also United States v. Heyward*, 729 F.2d 297 (4th Cir.1984); *deMars v. The Equitable Life Assurance Society*, 610 F.2d 55 (1st Cir.1979).[5]

■■■ We hold that the boy's statement was not more probative than C.W.'s in-court testimony. The term "probative," as applied to the residual exception to the hearsay rule, has been defined as:

> The probative value of evidence is its "tendency ... to establish the proposition that it is offered to prove." *McCormick on Evidence*, 3rd Ed., § 185, at 541. Evidence has probative value if it tends to prove the issue in dispute. *United States v. Ball*, 547 F.Supp. 929 (E.D.Tenn.1981).

**4.** The defense counsel argued that his cross-examination related only to those offenses that had allegedly occurred at Fort Polk, not Fulda. However, the judge found that the attack on C.W.'s credibility was sufficiently substantial to have impacted on her entire testimony.

**5.** Although not necessary to the resolution of this case, we observe that the government failed to demonstrate that other evidence was not reasonably procurable. The record reflects the presence of other evidence that was not only available to the government, but was admitted during the government's case-in-chief. Testimony from the appellant's wife corroborated C.W.'s testimony that she had complained about the appellant's sexual abuse before and after the incident at Fulda. Also, the appellant admitted to and apologized for having committed the first indecent act with C.W. in Fulda. The impact of this evidence is twofold. It strengthens C.W.'s credibility with respect to her complaints about having been sexually abused and it suggests, in conjunction with the appellant's admission, that the appellant was habitually engaging in sexual activity with C.W. *See United States v. Rath*, 27 M.J. 600 (A.C.M.R.1988), *pet. denied*, 29 M.J. 284 (C.M.A.1989); Mil.R.Evid. 406; *see also United*

States v. Moore, 30 M.J. 962 (N.M.C.M.R.1990), *aff'd*, 32 M.J. 170 (C.M.A.1991); *United States v. Rodriguez*, 28 M.J. 1016 (A.F.C.M.R.1989), *aff'd*, 31 M.J. 150 (C.M.A.1990). As a result, C.W.'s testimony was more probative even though it had been "substantially attacked" on cross-examination.

This alternative evidence escaped the military judge's attention because the trial counsel did not refer to it during the motions hearing. Moreover, the judge ruled on the admissibility of the boy's statement before the wife testified or the appellant's admission was proffered. Finally, the trial defense counsel did not bring the matter to the judge's attention by expanding the grounds for his objection. Had the judge conducted a more searching inquiry of the trial counsel or deferred ruling on the admissibility of the boy's statement until the government had presented all its evidence, he might have discovered that other probative evidence was procurable. These courses of action are always clearer with the benefit of hindsight. In any event, the defense counsel's failure to specifically object on grounds that other evidence was procurable waives the error. *United States v. Holt*, 33 M.J. 400 (C.M.A.1991); Mil.R.Evid. 103(a)(1).

Credibility on the other hand goes to "the quality or power of inspiring belief." *Webster's 3rd New International Dictionary*, p. 532. "A credible witness is one who, being competent to give evidence, is worthy of belief." *Burleson v. State*, 131 Tex.Cr.R. 576, 100 S.W.2d 1019, 1020 (1936).

. . . .

But, as a general rule, the credibility of a witness has nothing to do with whether or not his testimony is probative with respect to the fact which it seeks to prove. While it might be thought that the testimony of a disinterested witness, for example, who is completely disbelieved would not be probative, such is not the case for the law does not consider credibility as a component of relevance. See *McCormick* at 543 and n. 20. Relevance and probativeness are closely related in this regard but credibility is not a component of either.

*United States v. Welsh*, 774 F.2d 670, 672 (4th Cir.1985).

Moreover, one commentator has written that:

The legislative history to the residual exceptions does not provide a new definition of "probative" or "probative value." We must turn, therefore, to preexisting common law to determine the parameters of the term. In Wigmore's view, "probative value" refers to a logical tendency to show or indicate the material fact for which the evidence is offered. McCormick agrees, maintaining that probative evidence is evidence with a tendency to establish "the reference for which it is offered." Finally, Lilly states that the probative value of evidence is found in "the presence of a logical relationship between the evidence and the ultimate proposition that the evidence is offered to support." Thus, our legal tradition contemplates that probative evidence must have a tendency in logic to establish the material fact for which it is offered.

Therefore, to speak of evidence as being more probative than other available evidence denotes hearsay evidence which has a greater tendency in logic to establish the fact for which it is offered as more likely than other available evidence.... Thus, if faced with an offer under Rule 803(24) or 804(b)(5), the trial judge must determine that the proffered hearsay has a greater tendency to make the fact for which it is offered more likely than any other admissible evidence which can be secured by reasonable efforts. This means that the court must decide whether the link between the evidence and the fact for which it is offered is logically shorter and tighter than the link from other available evidence to the fact in issue.

Sonenshein, David A., *The Residual Exceptions To The Federal Hearsay Rule: Two Exceptions In Search Of A Rule*, 57 N.Y.U.L.Rev. 867, __ (1982).

Another commentator has observed that federal courts have not strictly adhered to the most probative requirement.[6] Rand notes that the plain language of the rule reflects Congressional intent to restrict admission of hearsay evidence to situations where the evidence was the most probative available to the proponent. Nevertheless, federal judges have admitted hearsay evidence under a variety of rationales. *E.g.*, where it possessed no more than the same or equal probative value as nonhearsay evidence (*United States v. Curro*, 847 F.2d 325 (6th Cir.), *cert. denied*, 488 U.S. 843, 109 S.Ct. 116, 102 L.Ed.2d 90 (1988)); where it "may be important in evaluating other evidence and arriving at the truth" (*United States v. Shaw*, 824 F.2d 601 (8th Cir.1987)); and where it "helps form a pattern of circumstantial evidence" (*United States v. Vretta*, 790 F.2d 651 (7th Cir.), *cert. denied*, 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 115 (1986)). However, there is no authority to support admission of hearsay evidence on grounds it was more *credible* than other, admissible nonhearsay evidence.

---

**6.** Rand, Joseph W., *The Residual Exceptions To The Federal Hearsay Rule: The Futile And Mis-* *guided Attempt To Restrain Judicial Discretion*, 80 Geo.L.J. 873 (1992).

Decisions from military appellate courts have also been instructive. In *Guaglione*, a majority of the Court of Military Appeals, citing *United States v. Powell*, 22 M.J. 141 (C.M.A.1986), noted that, depending upon the circumstances, a prior statement from a testifying witness may be more probative than the witness' in-court testimony. The court opined that trial judges could exercise their discretion to admit hearsay evidence by balancing the circumstances unique to the case. The court also cautioned trial judges not to use an "overly mechanistic" approach. *Guaglione*, 27 M.J. at 274. In holding that the trial judge's application of the residual exception by admission of two pretrial hearsay statements was faulty, the court found that the statements were not the most probative evidence available to the government. Another witness to the events was available and, in fact, gave testimony that was more probative than the hearsay evidence. The court cited several decisions from the United States courts of appeals that collectively held, "if a party who proposes to introduce a pretrial statement under the 'residual exception' has a witness who will testify in court to the facts sought to be provided, the trial judge should not admit the statement under Fed.R.Evid. 803(24)." *Id.* 27 M.J. at 275, citing, *Welsh*, 774 F.2d at 672; *Netterville v. Missouri*, 800 F.2d 798 (8th Cir.1986); *United States v. Leslie*, 542 F.2d 285 (5th Cir.1976). This rule would apply even where the witness was of "questionable credibility."

More recently, in *Giambra*, a case involving the attempted rape and indecent assault by an appellant on his stepdaughter, the court determined that it was error to admit the pretrial hearsay statement of the victim's mother under Mil.R.Evid. 803(24). The facts are somewhat similar to those in the instant case in that a family member (the victim's mother), had recanted a pretrial statement that would have corroborated her daughter's testimony. The court held that the daughter's testimony that she was assaulted was more probative than the mother's pretrial statement since, "What could be more probative on the point of the assault than the victim's own

testimony that she was assaulted?" *Giambra*, 33 M.J. at 334. Additionally, the mother testified, and the court found her testimony was more probative than her pretrial statement. In setting aside the lower court's decision, the court remanded the case for a limited hearing to determine whether the error in admitting the hearsay statement was prejudicial.

Finally, in *Lyons*, 36 M.J. 183, the court affirmed a decision from the Army Court of Military Review holding that a pretrial, videotaped reenactment by a deaf, mute, retarded rape victim of the appellant's assault upon her was more probative than her in-court testimony about the same event. Because of her disabilities, the rape victim's testimony was unintelligible. In contrast, her reenactment of the rape on the videotape clearly showed how the appellant raped her.

We are persuaded by the aforementioned authorities that the "substantial attack" on C.W.'s testimony during cross-examination and its possible adverse effect on her credibility did not render the pretrial statement of her brother "more probative" within the meaning of Mil.R.Evid. 803(24).

Assuming, *arguendo*, that decisional law would allow a comparison of the credibility of C.W.'s testimony with that of her brother's extrajudicial statement in determining which is more probative, we would still find that the military judge erred in admitting the statement. C.W.'s testimony, though attacked during cross-examination, was not totally incompetent, incredible, or devoid of evidentiary value. Moreover, as we indicated previously herein, there was other evidence that was not considered by the judge which corroborated C.W.'s allegations against the appellant and buttressed her credibility. *See supra* note 5. Furthermore, the judge did not consider several factors that detracted from the credibility of the brother's statement. For example, the statement was not subjected to cross-examination, was recanted, and was made in response to questions from a criminal investigator. *See United States v. Cordero*, 22 M.J. 216, 221–223 (C.M.A. 1986). While the statement does possess

some probative value, these detractors render it less believable. Measured by the standard of comparative credibility, at best the statement is equally as probative as C.W.'s testimony standing alone; at worst, it is less probative than C.W.'s corroborated testimony. We are convinced it is not more probative.

### V. Harmless Error

 We find the admission of the boy's statement harmless. *United States v. Batten,* 31 M.J. 205 (C.M.A.1990); Article 59, UCMJ, 10 U.S.C. § 859. The nonhearsay evidence—C.W.'s testimony, her mother's testimony, and the appellant's admission— were, if believed by the triers of fact, sufficient to establish that the appellant committed more than one indecent act with C.W.. *United States v. Albright,* 9 U.S.C.M.A. 628, 26 C.M.R. 408 (1958). Hence the boy's hearsay statement is cumulative. We recognize that, in *Guaglione,* the court found that the erroneous admission of two extrajudicial hearsay statements was prejudicial "[s]ince the military judge instructed the members that they could consider the statements for their truth and the Government argued not only that they were true but also that they corroborated Sawyer [the testifying witness], whose credibility had been eviscerated by the defense." *Id.* 27 M.J. at 276. This case warrants a different result. C.W.'s testimony, though rejected as to the attempted rape charge, was sufficiently credible to convince the court members to convict the appellant of indecent acts and indecent assault. Whether the court members were persuaded by C.W.'s testimony alone or in conjunction with the corroborating testimony of C.W.'s mother and the appellant's pretrial admission is of no consequence. Conversely, the defense case was persuasive as to the attempted rape charge but substantively weak as to the other charges of which the appellant was convicted. Where the government's case is strong and the defense's is not, harmless error should apply. *United States v. Berry,* 30 M.J. 134 (C.M.A.1990).

The findings of guilty and the sentence are affirmed.

Judge JOHNSON and Judge GRAVELLE concur.