UNITED STATES, Appellee,

v.

Staff Sergeant Rogelio PABLO, United States Army, Appellant.

ARMY 9700481.

U.S. Army Court of Criminal Appeals.

8 April 1999.

Kaplan, J., filed opinion concurring in part and dissenting in part.

For Appellant: Captain John C. Einstman, JA (argued); Colonel John T. Phelps II, JA; Lieutenant Colonel Michael L. Walters, JA; Major Leslie A. Nepper, JA; Captain Dirk

Gifford, JA (on brief); Colonel Adele H. Odegard, JA.

For Appellee: Captain Mary E. Braisted, JA (argued); Colonel Russell S. Estey, JA (on brief).

Before CAIRNS, Senior Judge, KAPLAN, and MERCK, Appellate Military Judges.

## OPINION OF THE COURT

CAIRNS, Senior Judge:

At a fully contested general court-martial, a panel of officer and enlisted members acquitted the appellant of sodomy with a child under the age of twelve but convicted him of the lesser included offense of indecent acts with a child under sixteen years of age, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 [hereinafter UCMJ]. The convening authority approved the sentence of a bad-conduct discharge and reduction to Private E1.

In reviewing this case under Article 66, UCMJ, we have examined the record of trial and considered the briefs submitted by the parties, as well as the matters personally raised by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We heard oral argument on the only assigned error, which is framed as follows:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY ALLOWING MS. MYRA EARLS TO TESTIFY CONCERNING THE HEARSAY STATEMENTS MADE BY [E.B.] UNDER THE RESIDUAL HEARSAY EXCEPTION, MIL.R.EVID. 803(24), WHERE THE STATEMENT DID NOT POSSESS PARTICULARIZED GUARANTEES OF TRUSTWORTHINESS, WHERE THE TESTIMONY WAS NOT MORE PROBATIVE THEN (SIC) ANY OTHER EVIDENCE OFFERED, AND WHERE THE INTEREST OF JUSTICE WAS NOT SERVED BY THE ADMISSION OF THE STATEMENTS INTO EVIDENCE.

We conclude that the military judge abused his discretion by admitting the hearsay statement, but we hold that the error was harmless.

## Background

On the day of the incident giving rise to the charge in this case, the appellant's wife, Siggy, was baby-sitting the then seven-year-old victim, E.B., and her brother. E.B. testified that it was fun at Siggy's house because she could play things like hide-and-seek with Kristie, the daughter of Siggy and the appellant. When Siggy went to the grocery store that day, the appellant, whom the children knew as "Cuddles," assumed the baby-sitting responsibilities.

Under the appellant's care, the children and the appellant played hide-and-seek inside the appellant's small three-bedroom apartment because the weather was inclement. When E.B. was "it," she and "Cuddles" walked into the master bedroom so the other children could hide. After E.B. climbed up on the bed, the appellant put a blindfold over her eyes. As the appellant stood in front of her, he put chocolate in E.B.'s mouth. E.B. further testified on direct examination as follows:

Q. What did he do next, [E.B.]?

A. He pulled down his pants and put his pee-pee in my mouth.

Q. How do you know that?

A. 'Cause I peeked under the blindfold.

Q. What is a pee-pee honey? Do girls have pee-pees? Is that a private part?

A. Yeah.

Q. How do you know it was his pee-pee honey?

A. 'Cause I peeked under it.

Q. And where was (sic) his pants?

A. Down on the floor.

Q. What did you do?

A. After I peeked under, I threw it off.

Q. You threw what off honey?

A. The blindfold.

Q. Then what'd you do?

A. I walked out of the room to tell Kristie.

Q. Did you tell Kristie?

A. Yeah.

Q. Was Siggy there?

A. No.

Q. Where was she?

A. Shopping.

Q. Did she ever come back?

A. Yes.

Q. And did you tell her?

A. Yeah.

Q. Did she—what did she say?

[After a hearsay objection was overruled, the testimony continued.]

Q. ... Can you say what she said?

A. She said she didn't believe me.

Q. She didn't believe you. Did she say you could get in trouble? Did you ever tell Siggy that you were lying?

A. I wasn't lying.

Q. You weren't lying? Did you tell your Mom?

A. No.

Q. How come?

A. 'Cause I was afraid.

Q. Afraid of what?

A. I might get in trouble.

Q. Did you tell anybody else?

A. Yes.

Q. Who did you tell?

A. The student counselor.

Before the trial on the merits, the military judge had conditionally granted a defense motion in limine to preclude the testimony of the student counselor, Ms. Earls. The military judge had found, as a preliminary matter, that Ms. Earls' testimony concerning what E.B. told her out-of-court would not be more probative on the pertinent issues than E.B.'s own in-court testimony. Because Military Rule of Evidence 803(24)(B) [hereinafter Mil.R.Evid.] requires the proffered out-of-court statement to be more probative on the point for which it is offered than any other reasonably procurable evidence, the military judge ruled that the testimony would not be admissible under the residual exception to the hearsay rule. The military judge made it clear, however, that his ruling was conditioned upon hearing E.B.'s trial testimony and evaluating whether she testified clearly and completely.

During a brief and cautious cross-examination of E.B. at trial, the defense attempted to impeach E.B.'s direct testimony that appellant had sexually abused her by demonstrating that she did not act as a traumatized victim when in the presence of the appellant several weeks after the incident. Specifically, the defense tried to elicit from E.B. testimony that she had returned to the Pablo residence after the alleged sexual abuse and played games with the appellant and his daughter, Jessica. The cross-examination, excluding minor portions which are unnecessary to this discussion, went as follows:

Q. Were you scared of Sergeant Pablo after the hide-n-seek game?

A. Was I scared of Kristie's dad?

Q. Yeah.

A. Yes.

Q. Okay. And did you go back to Kristie's parents' house after the hide-n-seek game?

A. I was there at the hide-n-seek game.

Q. Did you—that was during the Christmas break?

A. I think so.

Q. And after the Christmas break, do you remember going back to the house?

A. I don't [unfinished]

Q. Do you remember if—do you know Jessica?

A. Yes.

Q. Who's Jessica?

A. She's my little friend.

Q. Does Kristie have a sister named Jessica also?

A. I don't know.

Q. Did you go back to Kristie's house after the 1st of the year?

A. I don't know.

After the completion of direct and cross-examination of E.B., the government reasserted that Ms. Earls should be allowed to testify about what E.B. had told her regarding the sexual abuse. In reversing his earlier ruling, the military judge made findings that E.B.'s trial testimony was vague and unclear "as to the events surrounding the incident in many respects." Specifically, the military judge stated that E.B.'s "description about how the [hide-and-seek] game started,

how the game was played, how she went into the bedroom, and even at some incidents (sic), as to what occurred in the bedroom, as to how she told—reported the incident, who she told it to, what she told her—I'm talking about Siggy—are vague and unclear." The military judge made additional findings of fact supporting his conclusion that E.B.'s statements to Ms. Earls possessed circumstantial guarantees of trustworthiness. Finally, the military judge concluded that, because he found E.B.'s trial testimony vague and unclear, E.B.'s hearsay statements were "more probative than any other evidence before the court." Accordingly, the military judge allowed Ms. Earls to testify about E.B.'s out-of-court statements.

### Discussion

The military judge permitted Ms. Earls' testimony regarding E.B.'s out-of-court statements under Mil.R.Evid. 803(24), one of the two residual exceptions to the rule against hearsay. Under this rule, the following statements are not excluded by the hearsay rule, even though the declarant is available as a witness:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

### a. Standard of Review

■ Military judges enjoy broad discretion to determine the admissibility of evidence. Such discretion must be tempered by the recognition that the residual exception to the hearsay rule "is to be used 'rarely and only in exceptional circumstances.'" *United States v. Wiley*, 36 M.J. 825, 829 (A.C.M.R. 1993) (citations omitted). Nevertheless, a "ruling of the military judge admitting residual hearsay is entitled to 'considerable discretion' on appellate review." *United States*

*v. Pollard*, 38 M.J. 41, 49 (C.M.A.1993) (quoting *United States v. Powell*, 22 M.J. 141, 145 (C.M.A.1986)). Our standard of review, therefore, is whether the military judge abused his considerable discretion. In conducting our review, the military judge's findings of fact are to be upheld on appeal unless they are "clearly erroneous," whereas his conclusions of law are reviewed *de novo. United States v. Meeks*, 41 M.J. 150, 161 (C.M.A.1994) (quoting *United States v. Davis*, 36 M.J. 337, 340 (C.M.A.1993)).

### b. Admissibility of Hearsay under Residual Exception

■ Evidence admitted under the residual exception to the hearsay rule must be both highly reliable and necessary. *U.S. v. Giambra*, 33 M.J. 331, 334 (C.M.A.1991). Under the explicit language of Mil.R.Evid. 803(24), the reliability of the statement must be established by circumstantial guarantees of trustworthiness that are equivalent to those underlying the traditional hearsay exceptions. In this case, we are satisfied that the military judge did not abuse his discretion in finding ample circumstantial guarantees of trustworthiness in E.B.'s out-of-court statements.

■ The more troubling issue in this case, however, is whether the military judge abused his discretion in finding E.B.'s testimony vague and unclear and concluding, therefore, that the hearsay statements were necessary. Under Mil.R.Evid. 803(24)(B), such hearsay is "necessary" when it is more probative than any other reasonably procurable evidence. *United States v. Giambra*, 33 M.J. at 334. *See also United States v. Ureta*, 44 M.J. 290, 296 (1996), *cert. denied*, 519 U.S. 1059, 117 S.Ct. 692, 136 L.Ed.2d 615 (1997). The military judge made findings of fact that E.B.'s trial testimony was vague and unclear regarding how the hide-and-seek game started and was played, how she went into the bedroom, what occurred in the bedroom, to whom she reported the incident, and what she told Siggy. With regard to these findings, the only portion of E.B.'s direct testimony which could be construed as vague or unclear dealt with how she physically came into the appellant's bedroom:

Q. How did you get there [into appellant's bedroom]?

A. I walked in.

Q. You remember walking in? Do you know if he carried you in?

A. No.

Q. You don't remember? That's okay. What did you do—what happened when you were in the bedroom? Where did you go?

A. On his bed.

Based on this testimony, the military judge found that E.B.'s testimony was vague and unclear as to "how she went into the bedroom." Although we believe that any vagueness or lack of clarity stems more from the trial counsel's compound questions than from E.B.'s answers, the military judge's finding on this particular point cannot be termed "clearly erroneous."

Aside from this one finding, however, the remainder of the findings that E.B.'s testimony was vague and unclear—about how the game began; how it was played; what occurred in the bedroom; and what, how, and to whom she reported the sexual abuse—are simply unsupported by the record. To the contrary, we find that E.B. was particularly definite, clear, and unequivocal in her direct testimony.[1] Therefore, we are compelled by the record to conclude that the foundational findings of fact, except with regard to how E.B. entered the bedroom, were clearly erroneous.

Having found that all but one of the findings of fact were clearly erroneous, the core issue remains: Whether Ms. Earls' testimony—about what E.B. *told* her had happened—was necessary because it was more probative of what did or did not happen than E.B.'s own trial testimony. In our view, the imprecision of the evidence regarding how E.B. entered the bedroom does not support the necessity for presenting to the members her entire out-of-court statement about the appellant's sexual abuse. *See United States v. Lyons,* 36 M.J. 183 (C.M.A.1992) (military judge carefully restricted the scope of the out-of-court statement admitted into evidence). As it turns out, Ms. Earls' testimony did not even address how E.B. entered the bedroom, nor did it clarify any of the other matters cited by the military judge as vague. What Ms. Earls' testimony did was essentially repeat E.B.'s in-court testimony. Concluding, as we must, that E.B. testified clearly, unequivocally, and completely on all material issues, the only logical conclusion is that the out-of-court statement was not more probative than E.B.'s in-court testimony. After all, what could be more probative on the point of the sexual abuse than the victim's own in-court testimony that she was sexually abused?[2] As the hearsay statement fails the probativeness prong of Mil.R.Evid. 803(24), we hold that the military judge abused his considerable discretion in admitting Ms. Earls' testimony under the residual exception to the hearsay rule.

### c. Harmless Error Analysis

In view of our holding that the military judge abused his discretion in admitting the evidence, we must decide whether the error requires reversal under Article 59(a), UCMJ. Because the defense had a full and free opportunity to cross-examine E.B., the appellant was not denied his right to confrontation under the Sixth Amendment to the Constitution. *Delaware v. Fensterer,* 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Therefore, since the error was not of constitutional dimension, the standard for assessing the error in this case is whether the error was

---

1. We acknowledge that, on cross-examination, E.B.'s testimony demonstrates confusion about whether she returned to the Pablo's home after the time that the sexual abuse occurred; but, again, the confusion may have been the result of inartful questioning. Also, on cross-examination, E.B. testified that she did not know whether Jessica was Kristie's sister. This is completely understandable as Jessica and Kristie were half-sisters. Even so, Jessica was not present during the incident, so any confusion regarding her is collateral. In any event, the military judge did not cite either point as his basis for finding E.B.'s testimony vague and unclear; Ms. Earls did not explain or contribute to clarifying those points; and, the alleged confusion centered on matters in defense. The defense, of course, vigorously opposed the testimony of Ms. Earls.

2. We paraphrase Judge Cox, now the Chief Judge, United States Court of Appeals for the Armed Forces, in *United States v. Giambra,* 33 M.J. at 334.

harmless, not whether it was harmless beyond a reasonable doubt. *United States v. Pollard,* 38 M.J. 41, 51–52 (C.M.A.1993); *compare United States v. Jacobs,* 48 M.J. 208 (1998).

■ The *Pollard* court applied harmless error as explained by the Supreme Court in *Kotteakos v. United States,* 328 U.S. 750, 760, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Under the *Kotteakos–Pollard* analysis, whether the error in this case was harmless depends on whether we can say with "fair assurance" that the improperly admitted evidence did not have a *"substantial* influence" on the findings. 38 M.J. at 52 (emphasis added). The standard is not whether we are satisfied that there was sufficient evidence of guilt aside from the error. We are required to consider all the evidence, without stripping out the error, when we decide whether the error substantially influenced the findings of guilty. If we conclude that the error substantially influenced the guilty findings, we must reverse; if it did not, the error is harmless. The burden is on the government to persuade us that the error was harmless.

■ In deciding whether erroneously admitted hearsay is harmless or reversible, courts analyze how important the hearsay evidence was to the government's case; whether it was cumulative; the existence or not of corroborating evidence; the relative strength and weakness of the government and defense cases; and, perhaps most important, whether the witness whose out-of-court testimony has been admitted is subjected to in-court cross-examination. These factors apply to both harmless error analysis and when harmless beyond a reasonable doubt is the applicable standard. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Morgan,* 40 M.J. 405 (C.M.A.1994); *United States v. Grooters,* 39 M.J. 269 (C.M.A.1994); *U.S. v. Pollard,* 38 M.J. 41 (C.M.A.1993); *United States v. Batten,* 31 M.J. 205 (C.M.A. 1990); *U.S. v. Wiley,* 36 M.J. 825 (A.C.M.R. 1993). We will apply these factors to decide whether the error was harmless or not.

■ The prosecution's case was quite strong. It rested on E.B.'s clear and un-equivocal testimony that the appellant dropped his pants and put his "pee-pee" in her mouth. She related a coherent, step-by-step description of the events before, during, and after the abuse, and her testimony was internally consistent and detailed. E.B.'s trial testimony and her out-of-court statements to Ms. Earls are consistent. Ms. Earls' testimony was cumulative with E.B.'s in-court testimony and nonessential to the government's case. Nothing in the record directly contradicts E.B.'s definite testimony that the appellant sexually abused her.

E.B.'s testimony was substantially corroborated by Kristie and the appellant's own out-of-court statement. After confirming E.B.'s description about the game, Kristie testified that she saw the appellant, her father, standing in front of E.B., who was on the bed. Kristie then hid in the living room. Kristie testified that after E.B. came out of the bedroom, E.B. made an excited utterance that "Cuddles" had put a "weiner" in her mouth.

In addition to Kristie's corroboration of E.B.'s testimony, one of the appellant's co-workers further corroborated the events. Sergeant (SGT) Carter testified that the appellant admitted to him that he had played hide-and-seek with E.B., had taken her to the bedroom, blindfolded her eyes, put her on the bed, and was going to give her some candy. The appellant told SGT Carter that E.B. had accused him of sticking his finger in her mouth. Nowhere else in the record is there the slightest suggestion that E.B. said appellant had put his finger in her mouth.

In comparison, the defense case was weak. Aside from cross-examination of the government witnesses, the defense presented the testimony of Jessica and Kristie, the appellant's daughters, as its only merits witnesses. Jessica testified that she was in Alabama at the time of the charged offense. She testified that after she returned, E.B. visited her home and reacted normally to the appellant.

Kristie testified for the defense on direct about a normal game of hide-and-seek, and she made no mention that E.B. complained of sexual abuse. On cross-examination, however, she corroborated E.B.'s excited utterance,

as summarized above, that "Cuddles" had put his "weiner" in her mouth.

Viewing all the evidence of record, we are convinced that the great weight of the evidence proved the appellant guilty beyond a reasonable doubt. On balance, the government's case was convincingly strong, and the defense case was unpersuasive and weak. Within this context, the erroneously admitted hearsay amounted to cumulative bolstering. The defense had a full opportunity to cross-examine E.B., both as to the substantive allegations and her out-of-court statements. Considering all the evidence, we find with fair assurance that the cumulative hearsay evidence did not substantially influence the findings of guilty of indecent acts.[3] *Pollard,* 38 M.J. at 52.

We have considered the matters personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982). They merit no comment or relief.

The findings of guilty and the sentence are affirmed.

Judge MERCK concurs.

KAPLAN, Judge, concurring in part and dissenting in part:

I agree completely with my fellow judges that the testimony of Ms. Earls was inadmissible hearsay, and that the military judge committed legal error when he allowed this testimony to go before the court-martial panel. I respectfully decline to join in their follow-on holding that this error was harmless, or harmless beyond a reasonable doubt, depending on the standard applied.

My brothers have concluded that because of the cumulative nature of the erroneously admitted testimony, its admission is, therefore, clearly harmless. Their logic, as I un-

derstand it, is as follows: The victim, E.B., testified that the appellant had committed sodomy upon her by placing his penis in her mouth while she was blindfolded. She testified that she knew this happened because she "peeked." Her testimony was corroborated, at least peripherally, by the testimony of Kristie, the appellant's daughter, and by Sergeant Carter, a co-worker of the appellant.

The disagreement I have with my brothers' legal conclusion that Ms. Earls' testimony was merely cumulative is that I find the testimony, at one and the same time, more corroborative of the crime of indecent acts than the testimony of Kristie and Sergeant Carter, and less corroborative of, or even arguably in conflict with, E.B.'s testimony that she had been sodomized by the appellant. Ms. Earls testified, upon cross-examination, that E.B. had never related seeing the appellant's penis or describing it. The court-martial panel returned a finding of not guilty of sodomy, but guilty of indecent acts with a child. The logical conclusion is that Ms. Earls' erroneously admitted testimony raised the reasonable doubt that resulted in the finding of not guilty of the more serious offense and the guilty finding as to the lesser included offense. In this respect, it appears to have substantially bolstered E.B.'s testimony.

The problem, as I see it, is that this case presents the classic conundrum of whether the glass is half-full or half-empty. The majority seems to view the improperly admitted testimony as having had a minimal effect on the panel's findings because of its cumulative nature. However, can we conclude, with "fair assurance," Ms. Earls' testimony did not have the effect of overwhelming the appellant's entitlement to a presumption of innocence? In other words, because the panel members were not convinced beyond a rea-

---

**3.** Even if we were required to apply the more stringent constitutional standard of harmless beyond a reasonable doubt, we would reach the same conclusion that the findings should not be reversed. The harmless beyond a reasonable doubt standard requires us to decide "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); *see also United States v. Morgan,* 40 M.J. 405 (C.M.A.

1994). In view of the strength of the government's case, as established by the definite, unwavering, and clear testimony of the victim as corroborated by the appellant and his daughter, we are convinced there was no reasonable likelihood that the inadmissible evidence contributed to the appellant's conviction. We are convinced that, if Ms. Earls had not testified, the members would have found the appellant guilty of, at least, indecent acts. Therefore, the error was harmless beyond a reasonable doubt.

sonable doubt, based on E.B.'s testimony, that sodomy had been committed, (i.e., the glass was empty of proof of guilt of sodomy), how can we be sure that the improper testimony[1] did not have the effect of filling the glass half-full so as to support the guilty finding of indecent acts?

The law[2] requires that when legal error has been committed, we may only affirm those findings that we determine with "fair assurance" have not been substantially influenced by such error. *See United States v. Pollard,* 38 M.J. 41, 49 (C.M.A.1993). When the error is of Constitutional dimension, we must eliminate every "reasonable possibility that the evidence complained of might have contributed to the conviction." *United States v. Batten,* 31 M.J. 205, 211 (C.M.A. 1990). I am unable to conclude, without resorting to unbridled speculation as to what effect the erroneously admitted testimony had on the minds of the panel members, that either of these standards have been satisfied in this case. Therefore, based on the error noted, I would set aside the findings of guilty and authorize a full rehearing.

---

1. Ms. Earls testified that in *three separate interviews* E.B. had told her that the appellant had dropped his pants while standing in front of E.B.

2. *See* Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a).