UNITED STATES, Appellee,

v.

Rogelio PABLO, Staff Sergeant,
U.S. Army, Appellant.

No. 99–0681.
Crim.App. No. 9700481.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 4, 2000.

Decided Aug. 25, 2000.

GIERKE, J., delivered the opinion of the Court, in which EFFRON, J., and EVER-ETT, S.J., joined. CRAWFORD, C.J., and SULLIVAN, J., each filed a dissenting opinion.

For Appellant: *Captain Blair T. O'Connor* (argued); *Colonel Adele H. Odegard, Major Scott R. Morris,* and *Major Kirsten V.C. Brunson* (on brief).

For Appellee: *Captain Katherine M. Kane* (argued); *Colonel Russell S. Estey* and *Lieutenant Colonel Eugene R. Milhizer* (on brief); *Captain Mary E. Braisted.*

Judge GIERKE delivered the opinion of the Court.

Appellant was charged with sodomy with a child under 12, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925. A general court-martial composed of officer and enlisted members convicted him,

contrary to his pleas, of the lesser-included offense of committing an indecent act with a child, in violation of Article 134, UCMJ, 10 USC § 934. The adjudged and approved sentence provides for a bad-conduct discharge and reduction to the lowest enlisted grade. The Court of Criminal Appeals affirmed the findings and sentence. 50 MJ 658 (1999).

Our Court granted review of the following issue:

WHETHER THE MILITARY JUDGE'S ABUSE OF DISCRETION BY ALLOWING MS. MYRA EARLS TO TESTIFY REGARDING THE OUT-OF-COURT STATEMENTS OF [EB] UNDER THE RESIDUAL HEARSAY EXCEPTION, MIL.R.EVID. 803(24), WAS NOT HARMLESS ERROR BEYOND A REASONABLE DOUBT, DUE TO ITS SUBSTANTIAL INFLUENCE ON THE PANEL MEMBERS' FINDINGS, WHERE THE GOVERNMENT'S CASE WAS NOT STRONG AND WHERE THE PANEL MEMBERS DID NOT CONVICT APPELLANT OF THE CHARGED OFFENSE.

For the reasons set out below, we reverse.

*Facts*

Appellant's wife was baby-sitting the victim, EB, a 7–year–old girl, and her 6–year–old brother, RL, during the Christmas break from school. Appellant's wife left their apartment to run an errand, leaving the children in appellant's care. EB testified that she, RL, appellant, and appellant's daughter, KL, were playing hide-and-seek in the apartment. When EB was "it," appellant took her into the bedroom and blindfolded her. She testified that in the hide-and-seek game, "one person has to count and then all the others go hide," but that she did not count because appellant told her not to. She testified that appellant put chocolate in her mouth, and then pulled down his pants and "put his pee-pee in [her] mouth." She testified that she knew it was his "pee-pee" because she

peeked under the blindfold and saw appellant's pants "down on the floor." She testified that she took off the blindfold, walked out of the room, and told KL what had happened. She testified that she also told appellant's wife when she returned to the house, but that appellant's wife said she did not believe her. Appellant's wife told another baby-sitter that EB had told her something that upset appellant. EB testified that she did not tell her mother, because she was afraid that she "might get in trouble," but that she told her student counselor, Ms. Myra Earls.

On cross-examination, EB testified that she was afraid of appellant. When asked if she went back to appellant's house after the hide-and-seek incident, she responded, "I don't know."

Before the trial on the merits had begun, the military judge had conditionally granted a defense motion in limine to preclude the testimony of EB's student counselor, Ms. Earls. The testimony was offered by the prosecution as residual hearsay under Mil. R.Evid. 803(24), Manual for Courts–Martial, United States (1995 ed.).* The military judge preliminarily ruled that Ms. Earls' testimony was not admissible, because it was not more probative than EB's own testimony; but he conditioned his ruling on hearing and evaluating EB's testimony.

After EB's testimony on direct and cross-examination, the prosecution asked the military judge to reconsider. The military judge reversed his earlier ruling, finding that EB's testimony was "vague and foggy" concerning the events surrounding the alleged sodomy.

Ms. Earls testified that she has 5 years of experience as a counselor. She met EB in a counseling group for children of divorced parents. The mother of a student told Ms. Earls that EB had accused a friend's husband of putting his penis in her mouth. The woman also said that EB had hugged her inappropriately, and that EB's mother had "boyfriends in and out." Concerned that EB might have been abused, Ms. Earls went to

---

* Effective June 1, 1999, Fed.R.Evid. 807 became applicable to the military in place of Mil.R.Evid. 803(24) by operation of Mil.R.Evid. 1102.

EB's classroom and brought EB to her office for questioning. Ms. Earls began with small talk and then asked EB a number of questions about her mother's boyfriends and her life at home. She asked EB if any of her mother's boyfriends had "bothered" her. EB responded, "No. I never see them." EB then said, "You know what?" and volunteered that appellant had "put his wiener in her mouth." When Ms. Earls asked if anyone else was present, EB told her that appellant's daughters, JW and KL, were present.

After interviewing KL, Ms. Earls again questioned EB. She "basically repeated the story," but added "a little more detail." The following day, Ms. Earls interviewed EB a third time. She knew that EB was making a serious charge, and she "wanted to be sure." EB again "repeated the same story." Ms. Earls then notified the police. Ms. Earls testified that EB was comfortable during the questioning, but she covered her mouth, turned red, and seemed embarrassed when she said that appellant's pants were down.

On cross-examination, Ms. Earls testified that EB never said that she saw appellant's penis, nor did she describe it.

Sergeant (SGT) Arnold Carter testified that he works for appellant. He testified that appellant told him EB had accused him of sticking his finger in her mouth. SGT Carter asked appellant if EB was telling the truth, and appellant responded, "What do you think. Trust me."

EB's mother testified that EB enjoyed going to appellant's home for baby-sitting, and that EB and KL had become "very good friends." She testified that EB stopped going to appellant's home on January 12, when the police made EB's mother aware of "a sexual situation that had happened to [EB]" at appellant's apartment.

On cross-examination, EB's mother testified that EB was upset after her parents divorced and had some adjustment problems at school. She testified that, before January 12, EB never expressed any concern about going to appellant's home and had planned to "sleep over" at appellant's home.

The defense case consisted of the testimony of JW and KL. Appellant did not testify.

JW testified that she was away from home during the Christmas break of 1996, from December 20 until January 1. This testimony contradicted EB's statement to Ms. Earls that JW was present during the hide-and-seek game. JW also testified that after she returned, she observed that EB would "always jump on [appellant] and want to play with him." EB would "hang unto [sic] him a lot" and "demand his attention."

KL contradicted EB's description of the hide-and-seek game. Contrary to EB's testimony, KL testified that EB counted to 10, said, "Ready or not here I come," and then came out of the bedroom and found her brother, RL. KL also contradicted EB's testimony that she told KL appellant had put his penis in her mouth. KL testified that she thought EB said that "her brother stuck his thing in her mouth—that her brother showed his thing to her."

The court-martial's deliberations on findings were interrupted several times when court members asked for additional information or instructions. The court-martial first closed to deliberate at 4:44 p.m. on March 19. At 6:05 p.m., the members asked several evidentiary questions, which were addressed by replaying the testimony of KL. After the testimony was replayed, the court-martial adjourned overnight and reconvened at 8:30 a.m. on March 20. At that time, the court members raised questions about a lesser-included offense. The members then asked questions about direct and circumstantial evidence, and the military judge repeated his instructions on those topics. The members deliberated from 8:37 a.m. until 9:49 a.m., when they asked questions about voting procedure. They resumed deliberations at 10:10 a.m. and announced at 11:14 a.m. that they had arrived at findings. The members found appellant not guilty of sodomy but guilty of an indecent act by exposing himself with intent to satisfy his lust or sexual desires, in violation of Article 134, UCMJ.

*Discussion*

The court below held that the military judge erred by admitting Ms. Earls' testimo-

ny. The court then held that the error was nonconstitutional and that it was harmless. 50 MJ at 662–63. Before this Court, appellant asserts that the court below erred by finding the error harmless. The Government does not challenge the lower court's ruling on the admissibility of Ms. Earls' testimony, but asserts that any error in admitting it was harmless. Because the Government has not challenged the lower court's holding that Ms. Earls' testimony was inadmissible, our review is limited to the lower court's conclusion that the error was harmless. *See United States v. Grooters*, 39 MJ 269, 272–73 (CMA 1994).

■ We agree with the court below that the error was nonconstitutional. While errors in the admission of hearsay often implicate the Sixth Amendment right of confrontation, in this case appellant had the opportunity to cross-examine EB, and he used it effectively. Thus, this case involves inadmissible evidence rather than a denial of confrontation. *See United States v. Pollard*, 38 MJ 41, 52 (CMA 1993) (applying test for nonconstitutional error for admission of prior inconsistent statement where declarant testified); *United States v. Lyons*, 36 MJ 183, 188–89 (CMA 1992) (plurality opinion with three judges concluding that erroneous admission of hearsay evidence was not constitutional error because declarant testified); *United States v. Spotted War Bonnet*, 933 F.2d 1471 (8th Cir.1991) (no denial of confrontation where child testified but could not remember events on which pretrial statement was based); *see also United States v. Armstrong*, 53 MJ 76, 81 (2000), citing *United States v. Charley*, 189 F.3d 1251, 1270 (10th Cir.1999) (counselor's testimony impermissibly vouching for credibility of victims treated as nonconstitutional error).

■ The test for harmless error is "whether the error itself had substantial influence" on the findings. *Id.*, quoting *Pollard*, 38 MJ at 52, quoting *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). "If so, or if one is left in grave doubt, the conviction cannot stand."

*Id.*; *see also United States v. Adams*, 44 MJ 251, 252 (1996). The Government has the burden of persuading us that the error did not have a substantial influence on the findings. *United States v. Pollard, supra.*

■ Applying the foregoing principles, we hold that the Government has not met its burden of persuasion, leaving us in "grave doubt." The prosecution's case rested heavily on EB's testimony. The military judge found her testimony "vague and foggy" about the circumstances of the alleged offense. Her testimony was contradicted by KL. The court members' evidentiary questions indicated concern about the discrepancies between EB's and KL's testimony. In contrast, Ms. Earls' testimony provided a clear, lucid description of an indecent act. She described EB's demeanor in a manner suggesting truthfulness. Her testimony also provided evidence that EB had consistently repeated her accusation three times. The court-martial's findings suggest that Ms. Earls' testimony may have substantially influenced its deliberations. Because we have "grave doubt" about whether Ms. Earls' erroneously-admitted testimony had a substantial influence on the findings, we must reverse.

### Decision

The decision of the United States Army Court of Criminal Appeals is reversed. The findings of guilty and the sentence are set aside. A rehearing is authorized.

CRAWFORD, Chief Judge (dissenting):

I dissent, because of the majority's misguided view of the law-of-the-case. In my opinion, the judge did not abuse his discretion in finding Ms. Earls' testimony necessary, due to the tactics employed by the defense counsel.

### RESIDUAL HEARSAY

Mil.R.Evid. 803(24),[1] Manual for Courts–Martial, United States (1995 ed.), provides for the admission of a statement not specifically covered by any of the other hearsay

---

1. Currently Mil.R.Evid. 807 (effective 1 June 99).

exceptions when that statement has "circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence."

Our Court has previously explored the parameters of the residual hearsay exception and application of the rule. *See United States v. Powell*, 22 MJ 141 (CMA 1986); *United States v. Giambra*, 33 MJ 331 (CMA 1991); *United States v. Kelley*, 45 MJ 275 (1996). Any hearsay statement admitted under Mil.R.Evid. 803(24) must be material, necessary, and trustworthy (reliable).

Most litigation in the residual hearsay arena involves whether the statement has the necessary indicia of reliability/guarantees of trustworthiness. *See generally Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *United States v. Johnson*, 49 MJ 467 (1998). This case presents us with the question of necessity. Mil.R.Evid.

803(24)(B). Furthermore, this is one of those rare cases involving "necessity" where the victim is present, has testified, and has been cross-examined. There is no issue about the materiality or trustworthiness of EB's statement to her teacher, Ms. Earls.[2]

## LAW OF THE CASE

The issues in this case center around the discussion by the Court of Criminal Appeals concerning the necessity for Ms. Earls', the counselor's, testimony. While the judge found some of EB's testimony vague and unclear, the court below found "that EB was particularly definite, clear, and unequivocal in her direct testimony." 50 MJ at 662. Thus, the court then found that Ms. Earls' testimony was not more probative as to the offenses than the victim's testimony herself.

Now, however, the majority finds EB's testimony leaves "grave doubts" concerning the conviction. Yet, despite the Government actively contesting the lower court's conclusion that the trial judge erred, and despite appellate counsel being on notice, the majority refuses to relook at the admissibility of Ms. Earls' testimony, hiding behind "the law-

2. In support of his ruling, the military judge made the following findings of fact:

The testimony of Mrs. Earls is reliable as to [EB's] statements, the statements are reliable under a totality of the circumstances for the following reasons. Mrs. Earls was a person who [EB] knew and had trusted; she was involved in counseling with her previously; [EB] was not afraid of her.

Second, although Mrs. Earls brought [EB] into her office and initiated the conversation with her, she did not elicit responses from [EB] concerning the alleged incident with Sergeant Pablo. She did not question her initially about the incidents with Sergeant Pablo. None of the essential details of these statements were suggested to [EB] by Mrs. Earls. Mrs. Earls' questions to [EB] were open-ended rather than conclusionary or leading questions. [EB's] statements to Mrs. Earls were under the circumstances spontaneous, voluntary, uncontrived, and unconstrained. Only a short time transpired between the alleged incident and the interview with Mrs. Earls.

At the time of the alleged incident [EB] was 7 years old. The statements made by [EB] contain personal sexual matters that a 7-year-old child would not be expected to discuss with an adult or anyone else. The statements to Mrs. Earls involve an unusual and exciting event that a 7-

year-old would not be expected to experience or discuss with an adult or anyone else.

The language used by [EB] in describing the instance was language that one would expect of a 7-year-old child, that is she described a weiner or a pee-pee as opposed to a penis. The statement was not a response to any questions concerning the incident.

Although statements to Mrs. Earls do not qualify as an excited utterance, the nature of the statements to Mrs. Earls were similar to an excited utterance in that the statements were unsolicited and involved an unusual and exciting event.

[EB] demonstrated no animosity toward Sergeant Pablo and had no reason to lie about the incident, she had no reason to fabricate. [EB] has been consistent with her description of what occurred prior to the statements made to Mrs. Earls and several subsequent statements made since the statements to Mrs. Earls. [EB] has not recanted.

*See generally Idaho v. Wright*, 497 U.S. 805, 821–22, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990); *United States v. Hughes*, 52 MJ 278, 279 (2000); *United States v. Grant*, 42 MJ 340 (1995), for factors to consider when evaluating the trustworthiness of a child's statement on the topic of sexual abuse.

of-the-case doctrine." If EB's testimony is so unclear as to give the majority "grave doubts," such a conclusion logically and ineluctably demonstrates that the trial judge did not err by allowing Ms. Earls' testimony. For the majority to say that the victim's testimony was weak, but it was improper to supplement that testimony with otherwise admissible hearsay, binds and gags the trial counsel in a manner that prevents him from representing the interests of the Government.

The law-of-the-case doctrine, as interpreted by the majority, does not allow this Court to oversee the military justice system by pointing out when a lower court is erroneously applying the law. Such a view negates the very purpose for which this Court was created. A higher court is not bound by the decisions of a subordinate court or judge on legal issues. As we said in *United States v. Williams*, 41 MJ 134, 135 n. 2 (CMA 1994):

> The law-of-the-case doctrine does not preclude this Court, once the case has been properly granted for review, from considering an erroneous conclusion of law made by the Court of Military Review. *See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 . . . (1988).

Conversely, when a case is remanded, the trial court is bound by the decisions of the higher court if there has been no change in the underlying facts. *Jones v. Cassens Transport*, 982 F.2d 983, 987 (6th Cir.1993); *Shore v. Warden, Stateville Prison*, 942 F.2d 1117 (7th Cir.1991).

The majority's erroneous view of the law-of-the-case doctrine further complicates our "charter" to oversee the lower courts by requiring that the respective judge advocates general certify an issue to this Court before we can determine whether the lower court erroneously applied the law. We need not speculate why judge advocates general do not certify more cases. While various judge advocates general have certified cases on behalf of the defense, *see United States v. Diaz*, 40 MJ 335 (CMA 1994), most certifications have involved unfavorable rulings from the Courts of Criminal Appeals against the government position. *See, e.g., United States v. Mayfield*, 45 MJ 176 (1996). For the judge advocates general to certify all of these cases would create an appearance of an unfair advantage. Nonetheless, a certification by a judge advocate general is not required for this Court to examine a legal ruling from below. Once a case has been accepted for review by this Court, and the Government Appellate Division attacks the lower court ruling, that issue is placed squarely before us.

In the past, we have been inconsistent as to whether or not we are limited by the lower court's conclusions, with which we may sometimes disagree, that error has occurred. *Compare Williams*, 41 MJ 134 *with United States v. Grooters*, 39 MJ 269 (CMA 1994); *see also United States v. Townsend*, 49 MJ 175 (1998); *United States v. Taylor*, 47 MJ 322, 328 n. 1 (1997). Accordingly, I do not feel bound by the majority's view of law-of-the-case.

## DEFENSE THEORY

One of the keys to being an effective counsel is choosing the right theory of the case. In this case, the defense did not choose any of the affirmative defenses, for example, accident or alibi. Instead, the approach was to attack the 7–year–old victim's veracity. Starting with *voir dire* and ending with closing arguments, the defense theory of the case was EB's lack of credibility. Their theory was that you cannot tell when children are lying. During closing, the defense argued that "time frame wise [EB's testimony] didn't make sense," and "the Government can't . . . follow-up as to the specific details," including clothing and who was present.

The civilian counsel who represented appellant in state court on charges involving the same incident zealously represented him at trial. A large percentage of the court-martial record is devoted to a pretrial motion to suppress the victim's statements to a police officer and her statements to the school counselor, Ms. Earls. The judge exercised his discretion to exclude these statements in the first instance, but left the door open to admit them later.

Defense counsel's cross-examination of EB at trial was short. No questions were asked about EB's encounter with appellant in the bedroom. Defense counsel did ask the victim about the timing of the incident and whether or not appellant's stepdaughter, KL, had a friend named Jessica.

Since the door was left ajar by the judge, the defense counsel's strategy was to do a perfunctory, innuendo-laced cross-examination, attack the victim's testimony during closing argument, and ask the finder of fact to draw a series of negative inferences based on omissions from the testimony of a 7–year-old victim. This tactic would not allow the Government a chance to reply by reopening the case and offering additional evidence. *Cf. Portuondo v. Agard,* 529 U.S. 61, 120 S.Ct. 1119, 146 L.Ed.2d 47 (2000).

## DISCUSSION

The starting point for analysis of any evidentiary issue is the abuse of discretion standard of review. *See, e.g., Powell,* 22 MJ at 145, which states:

> Our review of the authorities convinces us that the facts of individual cases will frequently defy the application of hard-and-fast rules. Rather, what must generally occur is the balancing of a variety of circumstances unique to a particular case.

When young children, more than other victims, complain of abuse, there is a greater need for evidence that either corroborates or negates the victim's version of the abuse. Child victims are easily attacked and often easily confused with peripheral details.[3] Evidence which shows state of mind is important.

Prior to the admission of Ms. Earls' testimony, there was no evidence of an early detailed report (complaint) given to an adult. EB had previously told her friend KL immediately after the indecent assault what had happened, but EB got no support from that complaint. Without evidence of a report being made, the court members could conclude through negative inference that the failure to introduce such a report showed the crime did not occur. Accordingly, the Government had the right to introduce the fact that a report was made even, if the substance of that report was excluded.

Although this Court has never directly embraced the modern rule that in cases of young children witnesses, "the administration of justice is served by the admission of statements made in a more relaxed environment without the possible harm of traumatic courtroom encounter," *United States v. DeNoyer,* 811 F.2d 436, 438 (8th Cir.1987), we have recognized the importance of such a rule in *United States v. Kelley, supra.* The necessity rule should not be interpreted as a rule of preference, that is, if the declarant is available, the hearsay is not admissible and vice versa.

The following factors establish the need for Ms. Earls' testimony: (1) the victim was under 10 years of age; (2) the lack of physical evidence of sexual activity; (3) the lapse of time in reporting the activity to an adult; and (4) the reluctance of appellant's family to testify.

This rule is crucial because of what impacts on the ability of a witness to observe, remember, and recall. Certainly, memory does not exist without observation, and there can be no meaningful perception and narration without memory. What young victims lack, like in this case, is education, experience, and the ability to verbalize. Additionally, memory goes stale with time, especially with young children, justifying the need for the earlier statements by the victim to adults.

The cost of excluding all three statements is clear, while the possibility that the hearsay will mislead the jury is problematic. The statements taken by Ms. Earls were taken by an individual with a Master's degree in guidance and counseling and 5 years' experi-

---

**3.** If the defense counsel attacks a child victim's credibility in his or her opening statement, rehabilitating the victim's credibility during the Government's case in chief would not constitute improper bolstering. Rehabilitation testimony is properly admitted as soon as any attack on a child victim is mounted. *See* John E.B. Myers, et al., *Expert Testimony in Child Sexual Abuse Litigation,* 68 Neb.L.Rev. 1, 92 (1989).

ence as a counselor. She was careful not to be suggestive in taking the statement. Her testimony rebuts the negative inference that the victim took little action to report the crime.

Other statements made by the victim are essential when there are questions raised concerning the lack of details, as stressed by the defense in this case. *See, e.g., United States v. Shaw,* 824 F.2d 601, 610 (8th Cir. 1987); *see also United States v. Haner,* 49 MJ 72 (1998) (wife's statement to the Office of Special Investigations was found to be admissible); *Kelley,* 45 MJ at 280–82; *United States v. Grant,* 42 MJ 340 (1995).

If the factors mentioned in the argument which focused on the lack of specific details were raised during cross-examination, the federal courts would allow Ms. Earls' statements to be admissible. *Cf. United States v. Juvenile NB,* 59 F.3d 771, 776 n. 6 (8th Cir.1995); *United States v. Grooms,* 978 F.2d 425, 427 (8th Cir.1992); *United States v. St. John,* 851 F.2d 1096, 1098–99 (8th Cir.1988).

The defense did not set forth the negative inferences in their cross-examination, knowing they could be countered based on the judge's rulings. Thus, in the case of a child victim, the other statements are admissible as positive evidence as to what happened, and as evidence to counter any negative inferences arising from the failure to produce other reports made by the victim. Certainly, there are negative inferences in criminal cases, and the defendant is entitled to an instruction not to draw a negative inference

from the defendant's failure to testify. *See, e.g., Lakeside v. Oregon,* 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978). In this case, the evidence is also relevant to show even after an immediate report was made to KL, which was disregarded, the victim still followed through with other reports.

The victim could not even confirm that she talked to the police officer. It was only Ms. Earls' testimony that corroborated the report made to the police officer, but not the substance of the report. This evidence is necessary when there is a 7–year–old victim whose initial report is denied by a party with interest, and the defense seeks to rely on negative inferences.

Because the majority holds that the necessity prong was not met in this case, I believe it is incumbent upon Congress or the President, as many states have done,[4] to adopt a child hearsay exception. 2 John E.B. Myers, *Evidence in Child Abuse and Neglect Cases* § 753 at 354–66 (3rd ed.1997).[5]

SULLIVAN, Judge (dissenting):

I would affirm appellant's conviction for indecent acts with a child because the erroneously admitted testimony of Ms. Earls was cumulative of other evidence properly admitted in this case. *See United States v. Pittman,* 36 MJ 404, 408 (CMA 1993).

As I stated in my dissenting opinion in *United States v. Armstrong,* 53 MJ 76, 82 (2000), I do not think it appropriate to decide the harmless error issue on the basis that the prosecution failed to meet its burden of per-

---

4. Wash. Rev.Code Ann. § 9A.44.120 provides:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, describing any attempted act of sexual contact with or on the child by another, or describing any act of physical abuse of the child by another that results in substantial bodily harm as defined by RCW 9A.04.110, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings, including juvenile offense adjudications, in the courts of the state of Washington if:

(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

(2) The child either:
(a) testifies at the proceedings; or
(b) is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party his or her intention to offer the statement and the particulars of the statement sufficiently in advance of the proceedings to provide the adverse party with a fair opportunity to prepare to meet the statement.

5. In fact, Colorado, the state where the incident occurred, has a child hearsay exception. *People v. Bowers,* 801 P.2d 511 (Colo.1990).

suasion. In my view, the Government simply runs the risk that a conviction will be set aside if the appellate court has grave doubt whether an accused was materially prejudiced by a legal error. *See O'Neal v. McAninch*, 513 U.S. 432, 439, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). Under *O'Neal v. McAninch, supra*, I do not have any grave doubt on the material prejudice in this case. Moreover, I do not find that the erroneous admission of Ms. Earls' testimony materially prejudiced appellant's substantial rights to a fair trial. Article 59(a), UCMJ, 10 USC § 859(a).

The testimony at issue on this appeal came from Ms. Earls, a school counselor at the alleged victim's school. She testified that sometime after the incident, the alleged victim told her that appellant sexually abused her. She testified:

I just asked her how she was and how was school, some small talk in the beginning. Then I said, "One time you told me"—oh no, I said, "Who are you living with right now?" And she said, "My mom and my little brother." And then I said, "One time you told me your mom had boyfriends. Do you see any of them?" And she said, "No." I said, "Have any of them ever bothered you in any way?" And she said, "No. I never see them." *Then she said, "You know what?" And then she told me—and I said, "What?" And she said, "Cuddles put his weiner in my mouth."* And I said, "Cuddles. Who's Cuddles?" And she said, "He's at my baby-sitter's." I said, "Is he a grownup or a kid?" And she said, "A grownup," said it was at Cuddles' and Siggy's house. And I said, "Well tell me what happened." *And she said that they were playing hide-n-go-seek and she had a blindfold on and Cuddles took her to his bedroom and put a chocolate in her mouth and then put his weiner in her mouth.*

(R. 240) (emphasis added).

Later on, Ms. Earls testified to a second statement by the alleged victim to her about appellant's alleged sexual abuse.

Part of my purpose was to clarify who [KL] was and which baby-sitter that [EB] was talking about. [EB] had told me that it had happened at her baby-sitter's house. And through questioning or talking with [KL] I wasn't sure which baby-sitters they were talking about. So when I talked to [EB] again, she told me that [KL] lives at Cuddles' and Siggy's house. And I also asked her to tell me what happened again so I could be sure. And she basically repeated the story. She added a little more detail. *She said that she—when she went into the room she felt something in her mouth. She said, "I had all that stuff in my mouth and then he put in" no, "he had chocolate in my mouth. Then I felt something else in my mouth and then he—I took the blindfold off and his weiner was in my mouth."* She said, "I also had chocolate in the kitchen afterwards." She said, "I told Siggy about it." I think she said Siggy had gone to the grocery store and when Siggy got home she told Siggy and Siggy told her not to tell anyone because people could get into trouble. She said, "Siggy didn't believe me."

(R. 242) (emphasis added).

The record before me shows that this testimony was cumulative of other evidence presented in this case. *First*, the alleged victim herself testified that during a game of hide and seek, appellant gave her chocolate and then "he pulled down his pants and put his pee-pee in [her] mouth." (R. 211). *Second*, the alleged victim also testified that she told her playmate, KL, appellant's stepdaughter, right after the alleged incident the same story, and she told appellant's wife and some unknown "big guy" that appellant had done the above acts. (R. 212). *Finally*, KL testified that she was playing hide and seek with appellant and the alleged victim came out of appellant's bedroom and said "Cuddles had put a weiner in her mouth." (R. 285).

In my view, outside of Ms. Earls' testimony, there was ample "clear and lucid" evidence admitted in this case which established appellant's crimes and the alleged victim's complaints to others about them. The alleged victim's testimony on her post-offense complaint was not contradicted by KL. It was corroborated by her testimony.

Admission of one witness's testimony concerning the victim's post-offense complaint was not materially prejudicial because another witness properly testified to this same complaint. The admitted evidence was cumulative of other evidence in this case. *See* *United States v. Pittman, supra* (harmless error in admission of evidence of admissions to social worker because of other evidence of same admissions to friend and confidant). Accordingly, I would affirm this conviction of indecent acts with a child.