# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class MITCHELL L. BRANTLEY**
**United States Army, Appellant**

ARMY 20150199

Headquarters, Joint Readiness Training Center and Fort Polk
Randall L. Fluke and Charles L. Pritchard, Military Judges
Colonel Jan E. Aldykiewicz, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Charles D. Lozano, JA; Captain Heather L. Tregle, JA; Captain Matthew L. Jalandoni, JA (on brief); Colonel Mary J. Bradley, JA; Major Patrick J. Scudieri, JA; Captain Matthew L. Jalandoni, JA (on brief following remand); Lieutenant Colonel Christopher D. Carrier, JA; Major Todd W. Simpson, JA; Captain Matthew D. Bernstein, JA (on reply brief following remand).

For Appellee:  Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie, III, JA; Major Daniel D. Derner, JA; Captain Vincent S. Scalfani, JA (on brief); Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Christopher A. Clausen, JA; Captain Joshua B. Banister, JA (on brief following remand).

30 November 2017

---------------------------------------------------
MEMORANDUM OPINION ON REMAND
---------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

Our superior court remanded this case to this Court for reconsideration in light of *United States v. Sager*, 76 M.J. 158 (CAAF 2017).[1]  Upon remand, we consider what the government must prove to show that a victim is "otherwise unaware" that the sexual conduct has occurred.  *See* Uniform Code of Military

---

[1] Previously, we summarily affirmed the findings and sentence in this case. *United States v. Brantley*, ARMY 20160199 (Army Ct. Crim. App. 6 Oct. 2016).  On further appeal, the Court of Appeals for the Armed Forces (CAAF) set aside our decision and remanded the case for further reconsideration. *United States v. Brantley*, No. 17-0055/AR, 2017 CAAF LEXIS 548 (C.A.A.F. 1 Jun. 2017) (unpub.).

Justice art. 120(b)(2), 10 U.S.C. §920(b)(2) (2012) [UCMJ]. Based on the government's unusual charging decision, and the plain language of the statute as interpreted by *Sager*, we conclude that the government in this case must have proven that the victim was not unconscious, was not asleep, but was unaware of the sexual conduct. As this was not explained to the panel we find the instructions in this case constituted reversible error.

Appellant was charged with "touching the breasts of [Mrs. SR] when [he] knew or reasonably should have known that [Mrs. SR] was otherwise unaware that the sexual contact was occurring."[2]

As we discuss below, this case is both similar and dissimilar to *Sager*. In *Sager* the appellant was charged with a sexual offense while the victim was "asleep, unconscious, or otherwise unaware" that the sexual act was occurring. In *Sager*, however, the panel *acquitted* appellant of the sexual act while the victim was asleep or unconscious, finding him guilty only under the theory that the sexual act happened while the victim was "otherwise unaware." Here, by contrast, the government only alleged that the sexual contact happened while Mrs. SR was "otherwise unaware." Thus here, appellant was convicted as charged.

## BACKGROUND

Mrs. SR's daughter was an enlisted soldier in appellant's unit. At a residential party at the home of her daughter, Mrs. SR had told the revelers that she had recently had breast augmentation surgery. After consuming approximately nine shots of rum, and (apparently, mistakenly) taking the drug Klonopin, Mrs. SR became very ill. Appellant told SR's daughter and husband that he would stay and care for Mrs. SR. Mrs. SR testified that after vomiting, the next thing she remembered was the appellant straddled over her pulling her shorts to the side. She then testified that she lost consciousness, and awoke several hours later to appellant telling her "Don't tell anybody what happened" and that "I'm an MP [military police officer]" and that he would "go after" her daughter, he knew where she lived and "I will hurt her." Later that weekend appellant sent Mrs. SR a text message, saying "While you were passed out, I took out your breasts and masturbated to you." Mrs. SR's daughter saw the text message. She later had a text exchange with appellant for clarification:

> [Appellant:] Hey . . .
>
> [Appellant:] can you tell me what's wrong please?

---

[2] A panel of officer and enlisted members convicted appellant of one specification of abusive sexual contact in violation of Article 120, UCMJ, and sentenced appellant to a bad-conduct discharge, confinement for ninety days, and reduction to the grade of E-1.

[Daughter:] I saw what you texted my mom before she left.

[Appellant:] So your mad about that . . . . I'm sorry I guess would be the start.  Why I did it idk I don't really know how to make it up to you or for yall to trust me again I'm just sorry for my stupid decision I made while you and [daughter's husband] trusted me. . .

[Daughter:] You can be sorry all you want.  Do you know that is sexual assault!!!  You set her back so much!

[Daughter:] And at work you will leave me alone.  Unless having to do with work.

[Appellant:] Ok.

[Daughter:] Did you do anything else to my mom while she was sleeping beside take her boobs out of her shirt and masturbate to them?  She deserves to know

[Appellant:] Nothing else happened . . . .

[Appellant:] I feel ashamed . . .

[Daughter:] So just that?

[Appellant:] Yes

(spelling and ellipses in original).  At trial, appellant was asked whether Mrs. SR was "unconscious."  Appellant responded:

A. She was always restless.  It was never passed out, like as a faint or her body was still.  She was restless the whole time.

. . .

A. Unconscious, I don't know.  Restless, yes.

**LAW AND DISCUSSION**

Appellant was charged with touching the breast of Mrs. SR while she was "otherwise unaware" the contact was happening. We first discuss what the phrase "otherwise unaware" means in light of *Sager*. We next address whether the military judge properly instructed the panel.

### A. When is a victim "otherwise unaware" of the sexual contact?

In *Sager*, the CAAF made clear that "otherwise unaware" is a theory of liability that is separate from when the victim of a sexual assault is "asleep" or "unconscious." 76 M.J. at 162. Nonetheless, the parties disagree as to what it means to be "otherwise unaware" of the sexual contact.

The government argues that "otherwise unaware," while being a separate theory of liability, nonetheless incorporates a sleeping or unconscious victim. The government argues that just as all sleeping victims are also unconscious, all unconscious victims are also otherwise unaware. Or, as the government analogizes, all squares are rectangles but not all rectangles are squares. This is the "Russian nesting doll" theory where each theory of liability in the statute encapsulates the former.

Appellant, in his brief, sharply disagrees. Appellant argues that the statute's use of the word "otherwise" in "otherwise unaware" means the victim is unaware *but not* sleeping or unconscious. Under appellant's theory, the government can only prove a victim is "otherwise unaware" if the government proves: (1) that the victim is unaware of the sexual contact; (2) the victim is not asleep; and (3) the victim is not unconscious. Under this "Goldilocks" theory, the government must get the evidence just right. If the government proves too much (e.g. proving that the unaware victim was also unconscious), then the government has overproven their case and has disproven that the victim was *otherwise* unaware.

While we find friction in the reasoning no matter which way we turn, we find appellant has the better argument given our superior court's decision in *Sager*. The government's nesting doll theory essentially reads the word "otherwise" out of the statute. It is possible, as the government argues, that every sleeping victim is also an unconscious victim. It also seems almost certain that every unconscious victim is also an unaware victim. However, it is an odd turn of phrase to say that every unconscious victim is an *otherwise* unaware victim. In *Sager* the CAAF adopted a definition of "otherwise" as meaning in "in a different way or manner." 76 M.J. at 162. Read in context this means that "otherwise unaware" means a victim

4

who is unaware that the sexual contact is taking place for reasons *different than* the victim being asleep or unconscious.[3]

### B. Instructions

Because of the government's charging decision, the military judge modified the standard instruction. The relevant part of the given instruction was as follows:

> [T]he accused committed sexual contact upon Mrs. [SR] to wit: touching her breast; and
>
> [] that the accused did so when he knew or reasonably should have known that Mrs. [SR] was otherwise unaware that sexual contact was occurring.

---

[3] We see "friction" in this result because at first blush it seems odd that the government could fail to meet their burden of proof that the victim was "otherwise unaware" by proving that the victim was *so* unaware as to be in a state of unconsciousness. While odd, it is not so odd as to "lead[] to an absurd result" such that we could ignore the plain language of the statute. *United States v. Schell*, 72 M.J. 339, 343 (C.A.A.F. 2013) (citing *United States v. King*, 71 M.J. 50, 52 (C.A.A.F. 2012)). Additionally, the government was not required to allege a single theory of liability. While writing for the dissent in *Sager*, Judge Stucky nonetheless points out that "we have long held that 'military criminal practice requires neither unanimous panel members, nor panel agreement on one theory of liability, as long as two-thirds of the panel members agree that the government has proven all the elements of the offense.'" *Sager*, 76 M.J. at 163 (Stucky, J. dissenting) (quoting *United States v. Brown*, 65 M.J. 356, 359 (C.A.A.F. 2007)). Had the government alleged that Mrs. SR was "asleep, unconscious, or otherwise unaware" of the sexual contact the panel could have returned a guilty verdict and avoided the issue we now address on appeal. While Judge Stucky was writing in dissent, it was not on a point of law that the majority opinion directly addressed, contradicted, or in which they overruled their prior decisions.

Consider, for example, the three theories of liability in a larceny offense. *See* UCMJ art. 121. The word "steal" includes a "taking," "withholding" or "obtaining" theory of liability. If, however, the government charges only a single theory (e.g. a "taking") they cannot complain on appeal if the evidence supported a different theory that they could have alleged (by following the model specification), but did not. Accordingly, any absurdity in the result is caused by the government's charging decision in this case, not the plain language of the statute.

With the appellate hindsight provided by *Sager* the instruction given in this case has obvious problems. The instruction did not mention (as it was not charged) what to do if the panel found that Mrs. SR was asleep or unconscious. More importantly, by not mentioning "asleep" or "unconscious" the phrase "otherwise unaware" was without context. The word "otherwise" informs the panel member that "unaware" is to be understood in reference to some other standard (e.g. asleep or unconscious). But by not mentioning sleeping or unconscious victims the word "otherwise" has no reference point and cannot be given its normal meaning.

Finding error, we test for harmlessness.[4] *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017) (citations omitted). As we see no constitutional issues "at play" we test for non-constitutional error. *See United States v. Medina*, 69 M.J. 462, 465 (CAAF 2011). "[T]he test for harmlessness is whether the instructional error had 'substantial influence' on the findings." *United States v. Gibson*, 58 M.J. 1, 7 (C.A.A.F. 2003). "If it did, or if we are left in grave doubt, the conviction cannot stand.'" *Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).

We review de novo the issue whether the error was harmless. *See United States v. Pablo*, 53 M.J. 356, 359 (C.A.A.F. 2000). The Government has the burden of persuasion. *Id.* We cannot find the error to be harmless.

As we've interpreted *Sager,* an "otherwise unaware" victim is a victim who is *not* asleep, *not* unconscious, but is nonetheless unaware of the sexual contact in question.

A reasonable panel member could have found that Mrs. SR was asleep when she was assaulted by appellant. A reasonable panel member could have found that Mrs. SR was, as she herself testified, unconscious when she was assaulted by appellant. A reasonable panel member also could have concluded, given appellant's testimony, that Mrs. SR was otherwise unaware that the sexual contact was happening.

This leaves us with an unusual problem. While each theory above is reasonable and, if proven beyond a reasonable doubt, would result in a conviction of

---

[4] After being provided the initial opportunity outside the presence of the members to discuss the instructions, the defense stated that they had "no objection" to the instructions. This at least forfeited, but likely waived, the instructional error at issue. *See United States v. Swift*, 76 M.J. 210, 218 (C.A.A.F. 2017) ("[A]s a general proposition of law, 'no objection' constitutes an affirmative waiver of the right or admission at issue."). However, we note that we too did not identify the instructional error during our initial review of the case. Accordingly, and especially given the non-standard charging decision, we exercise our Article 66(c), UCMJ, authority to notice the forfeited or waived error.

Article 120(d), UCMJ, only one theory—that the victim was "otherwise unaware"—was charged. We may not affirm a conviction based on an uncharged theory of liability. *United States v. Bennitt*, 74 M.J. 125, 128 (C.A.A.F. 2015) (citing *United States v. Riley*, 50 M.J. 410, 415 (C.A.A.F. 1999). While we conclude that there is legally and factually sufficient evidence that Mrs. SR was otherwise unaware of the sexual contact, we are not convinced that the panel convicted appellant to the exclusion of the other two theories of liability not charged. Accordingly, we find the instructional error had a substantial influence on the findings.

## CONCLUSION

The finding and sentence are SET ASIDE. A retrial is authorized.

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7